306 So.2d 806 (1975)
Herbert Ray JACK, Plaintiff-Appellee,
v.
The FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.
No. 4848.
Court of Appeal of Louisiana, Third Circuit.
January 23, 1975.
*807 Allen, Gooch & Bourgeois by Paul J. Breaux, Lafayette, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Herbert Ray Jack instituted this suit for workmen's compensation benefits, plus penalties and attorney's fees. The defendant is The Fidelity & Casualty Company of New York, the compensation insurer of plaintiff's employer. Defendant filed an exception of prematurity and an answer. The exception was referred to the merits. After trial, judgment was rendered by the trial court in favor of plaintiff, awarding him the compensation benefits claimed and travel expenses, but making no award of penalties and attorney's fees. The judgment did not purport to dispose of the exception of prematurity filed by defendant.
Defendant appealed from the judgment insofar as it impliedly overruled its exception of prematurity and awarded plaintiff workmen's compensation benefits and travel expenses. Plaintiff answered the appeal, praying that the judgment be amended to award him penalties and attorney's fees.
One issue presented is whether the suit was filed prematurely, and thus whether it should be dismissed under the provisions of LSA-R.S. 23:1314. We have decided that a resolution of that issue disposes of the case.
Plaintiff sustained an injury on November 30, 1973, while working as a roughneck on an oil rig for Hercules Drilling Company. His injury was diagnosed as a comminuted fracture of the distal phalanx of the great toe of his left foot. He went to a doctor the day after the accident occurred, where his injury was diagnosed as a fractured toe, and he then was referred for treatment to his family physician, Dr. Ramson K. Vidrine, of Ville Platte.
Dr. Vidrine first examined plaintiff on December 3, 1973, and he treated him from that date until he discharged him on March 18, 1974. He found that plaintiff was disabled during most of the time this treatment was being administered, but he concluded that plaintiff had recovered fully and was able to return to his regular employment by March 11, 1974. Dr. Vidrine wrote a letter to Hercules Drilling Company, plaintiff's employer, on March 18, 1974, stating that:
"This is to inform you that I have discharged Herbert Ray Jack as fully recovered and able to return to full time work. My final bill is enclosed with this letter."
Hercules promptly forwarded that letter to the defendant insurer.
On January 23, 1974, while plaintiff was being treated by Dr. Vidrine, the latter referred him to Dr. Frazier Gaar, an orthopaedic surgeon. Dr. Gaar found that the fracture of plaintiff's toe was in good alignment and was undergoing healing, but that Jack was still disabled from performing manual labor at that time. He treated plaintiff from January 23 until March 6, 1974. On the last mentioned date, Dr. Gaar found that the fracture had healed, that plaintiff walked without a limp, that he complained of no pain, that he had a normal range of motion in the joints and big toe, and that he was no longer disabled from performing manual labor. He released plaintiff on that date to return to his former type work, although he advised him to wear a shoe with a steel toe. He testified "I thought that he had no significant problem or disability." Dr. Gaar wrote to Dr. Vidrine on March 6, 1974, sending a copy of the letter to Hercules Drilling Company, and in that letter he reviewed the treatment which had been *808 administered to plaintiff and concluded with the statement that:
"I am releasing the patient today and he can return to his former type work. I advised him to wear steel toe boots should he have the occasion. There appears to be no disability."
Hercules promptly sent that report from Dr. Gaar to the defendant insurer.
Defendant, Fidelity & Casualty, received a report of plaintiff's injury from its insured, Hercules Drilling Company, on December 17, 1973. That was the first report which defendant had of the injury, and it was the first knowledge that it acquired of the fact that an accident had occurred. On the same day that report was received, defendant referred it to an investigator, who investigated the claim promptly. On December 28, 1973, exactly four weeks after the accident occurred, defendant mailed to plaintiff a draft for $195.00, representing the payment of compensation benefits at the maximum rate of $65.00 per week for the period beginning December 8 and ending December 28, 1973. Payment of compensation for the first week was withheld at that time, as authorized by LSA-R.S. 23:1224, but the amount due for the first week was paid promptly after the disability had lasted six weeks.
Plaintiff engaged an attorney to represent him on or about December 28, 1973, and on that date the latter's counsel wrote to Hercules Drilling Company advising that he represented plaintiff, demanding payment of compensation benefits at the maximum rate, requesting the name of the insurer, and asking for copies of medical reports. That letter was written to Hercules on the same day that the latter's insurer, Fidelity & Casualty, mailed a draft to plaintiff to cover all compensation benefits due up to date. Defendant received that letter after the payment had been made.
Defendant paid all compensation benefits due plaintiff promptly thereafter, until March 27, 1974, when it discontinued making such payments. The payments were stopped after defendant received the above mentioned letters from the two treating physicians, Dr. Vidrine and Dr. Gaar, advising that plaintiff had fully recovered from his injury, that he could return to his former type of employment, and that he had no disability.
The instant suit was filed on April 18, 1974, or 24 days after the payment of compensation benefits was discontinued. No demand was made on defendant or the employer for compensation benefits between March 27, when the payment of benefits was discontinued, and April 18, when this suit was filed. No medical report was furnished to defendant during that time, and defendant received no information from any source that plaintiff was having trouble with his foot after having been discharged by his treating physicians and prior to the filing of this suit.
Plaintiff testified that after he had been discharged by Dr. Vidrine and by Dr. Gaar, his injured toe continued to bother him to the extent that he could not wear a shoe without suffering pain, and that the nailbed became infected sometime during the early part of April. He, however, did not seek any medical attention between the time he was discharged by his doctors and the date this suit was filed. He did go to Dr. Gaar for treatment on May 6, 1974, about 19 days after the suit was filed, and Dr. Gaar immediately resumed treating him. The treatment administered included the removal of the nail and nailbed of plaintiff's left great toe on May 10, 1974.
Defendant, through its attorney, received a report from Dr. Gaar on May 13, 1974, containing information about the post-discharge complications which had developed in plaintiff's toe. Three days after that report was received, that is, on May 16, 1974, defendant resumed the payment of maximum weekly compensation benefits to plaintiff. On that date, defendant sent plaintiff a draft for $455.00, which included compensation up to date, including the *809 period from March 27 through May 16, 1974. Plaintiff received that payment the day after it was mailed, and defendant has continued to pay compensation benefits promptly since that time.
The trial judge apparently overlooked the exception of prematurity which was filed by defendant, since he did not mention that exception in his reasons for judgment or in the decree. In rejecting plaintiff's demands for penalties and attorney's fees, however, the trial judge stated, significantly, that:
"I do not find that penalties and attorney's fees are called for in this particular case, that the defendant did all within its power to afford workmen's compensation benefits to the plaintiff, that when the plaintiff was cut off of comp on or about March 27, 1974, that there was sufficient medical grounds for the defendant having terminated weekly compensation benefits. Upon the defendant having received further evidence of further medical difficulties encountered by the plaintiff, it resumed the payment of compensation."
Defendant argues strenuously that the trial court erred in failing to sustain its exception of prematurity.
LSA-R.S. 23:1314 provides that:
"Unless in the verified petition above referred to it is alleged ... that the employer has refused to pay the maximum percent of wages to which petitioner is entitled under the provisions of this Chapter, or that the employee has not been furnished the proper medical attention, or that the employee has not been furnished with copies of the reports of examination or examinations made by employer's medical practitioners after written request therefor has been made under the provisions of this Chapter, the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of non-payment or of failure to render medical attention or failure to furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved." (Emphasis added).
In determining whether a compensation suit is premature inquiry must be made as to whether the employer or his insurer has been given reasonable time after receiving notice or actual knowledge of the accident and injury to investigate the matter and to commence payment of benefits. The question of what is a "reasonable" time in which to complete the investigation and begin the payment of benefits must be determined from the peculiar facts of each case. Vidrine v. Argonaut-Southwest Insurance Company, 166 So.2d 287 (La.App. 3 Cir. 1964).
In cases involving the termination and the later resumption of payment of compensation benefits, the decisive factors in determining whether the employer can maintain his exception of prematurity are the reasonableness of his action in ceasing to make payments, his promptness in resuming them, and the manifestation of a desire to cooperate in making the payments which are legally due the claimant. See Vidrine v. Argonaut-Southwest Insurance Company, supra; Hadwin v. American Mutual Liability Insurance Company, 171 So.2d 776 (La.App. 3 Cir. 1965); Malone, Louisiana Workmen's Compensation Law and Practice, 1951, Sec. 383, p. 490.
The question as to whether the employee's suit is premature must be determined according to the facts and circumstances which existed at the time the suit was filed. Vidrine v. Argonaut-Southwest Insurance Company, supra.
*810 In the instant suit plaintiff alleged that defendant arbitrarily and capriciously terminated the payment of compensation benefits on March 10, 1974, and that it refuses to bring them up to date despite repeated amicable demand therefor. Defendant has denied those allegations. The evidence convinces us that such allegations are without reasonable cause or foundation in fact, and that defendant is entitled to have its exception of prematurity sustained and the suit dismissed.
The evidence in this case shows that defendant investigated the claim and paid all of the compensation benefits due within 11 days after notice of the claim was first given to it. That payment was made four weeks after the accident occurred, and it was mailed to plaintiff before any demand, either orally or in writing, was made on defendant by plaintiff or his attorney. Thereafter the payment of compensation benefits was made to plaintiff each week, without any delays whatsoever, until March 27, 1974, when the payments were discontinued. Defendant ceased the payment of benefits at that time because of the reports which it received from both of Jack's treating physicians stating that plaintiff had fully recovered, that he could return to his regular employment and that he was no longer disabled. Defendant had no information which tended to contradict those reports. We find that defendant began the payment of maximum compensation benefits within a reasonable time after the accident occurred, and after it was reported to defendant. We also find that in view of the reports of the two treating physicians, defendant was justified in discontinuing the payment of such benefits on March 27, 1974.
During the period between March 27, when the payments were discontinued, and April 18, 1974, when this suit was filed, no demand was made on defendant for the resumption of such payments, and no information was supplied to defendant that plaintiff might still be disabled. When the suit was filed, therefore, all of the reports and information which defendant had received up to that time showed clearly, and without contradiction, that no further compensation payments were owed to plaintiff. Actually, no medical evidence was available to plaintiff or to anyone else showing that plaintiff was disabled when the suit was filed, because plaintiff did not see a doctor between the time his two treating physicians certified that he was able to return to work and the time this action was instituted. He, in fact, did not consult a physician until May 6, more than two weeks after the suit had been filed. Defendant received a report from that doctor seven days later, on May 13, and it paid all compensation benefits due three days after that report was received.
The evidence shows clearly that defendant has never refused, either expressly or impliedly, to pay the maximum compensation benefits due plaintiff.
Plaintiff did not allege in his petition that defendant refused to pay medical bills and travel expenses allegedly incurred by plaintiff in traveling to and from the office of one of his treating physicians. He argues in his brief, however, that plaintiff is entitled to recover penalties and attorney's fees because of the defendant's refusal to pay those expenses. Although plaintiff does not make that argument in opposition to the exception of prematurity, we have considered it in deciding the issues presented by that exception.
In determining whether a suit should be dismissed on an exception of prematurity under LSA-R.S. 23:1314, the test is not whether the employer has refused to pay the medical bills incurred, but instead it is whether "the employee has not been furnished the proper medical attention." Moore v. American Motorist Insurance Company, 216 So.2d 674 (La.App. 3 Cir. 1969); Dugas v. Houston Contracting Company, 191 So.2d 178 (La.App. 3 Cir. 1966). In the instant suit the record shows that plaintiff has been furnished proper medical attention and that he *811 is currently being furnished such attention. Even if we accept plaintiff's argument that defendant has refused to pay some medical and travel expenses, that would not defeat defendant's exception of prematurity.
We nevertheless have considered the evidence and have determined that defendant has not refused, either expressly or impliedly, to pay any medical or travel expenses incurred by plaintiff.
The trial of this case took place on May 20, 1974, just a little over one month after the suit was filed. An employee of Underwriters Adjusting Company, which handles workmen's compensation claims against Hercules, testified that prior to the trial defendant had paid $184.50 as medical expenses, and that there were other such bills outstanding which were in the process of being paid when the employer received notice of the trial. He stated, however, that all of the unpaid medical expenses had been incurred after January, 1974, that the company has paid or will pay every such bill, and that it has not refused to pay any medical expense incurred for treating plaintiff's injury.
Dr. Vidrine testified that although defendant has paid him most of the medical fees due for treating plaintiff, there is a balance of $55.50 due him now for various office visits and drugs over a period beginning February 4 and ending May 10, 1974. He does not know, however, whether any statements have been sent to Hercules or to defendant for those fees. His secretary testified that she "thinks" she sent a statement to Hercules for a part of that amount on March 11, 1974 (she probably meant March 18 since Dr. Vidrine's final report was submitted on that date), but that she can't be sure.
Dr. Gaar testified that his bill up to May 6, 1974, amounted to $150.00, that to his knowledge a statement has never been sent to Hercules or to defendant, but that "they will get a bill eventually." He also stated that another fee will be due him for the treatment he administered to plaintiff on May 10, but that that bill "has not been posted yet," and thus it has not been sent to defendant or to anyone else.
Plaintiff testified that he was treated by Dr. Dardeau, now deceased, in December, 1973, and that his mother paid the doctor $17.50 for that treatment. He concedes, however, that he has never reported or told anyone, not even his own attorney, about that visit or that payment.
Plaintiff also testified that he made "about eleven or nine" trips from Ville Platte to Opelousas for treatment by Dr. Gaar, and that defendant has not paid him the expenses he incurred in making those trips. He stated, however, that he did not ask the defendant at any time for payment of those traveling expenses. No demand for payment of those expenses was made by plaintiff or his counsel prior to this suit, and the record does not indicate that defendant had any knowledge of the fact that travel expenses for that purpose had been incurred.
We find that any failure or delay which may have occurred in the payment of the above medical or travel expenses was reasonable and was justified. There has been no express refusal to pay those expenses, and the evidence does not justify a holding that the defendant has impliedly refused to pay them. The exception of prematurity should have been sustained by the trial court, therefore, even if we assume that the failure to pay medical and travel expenses alone warrants the filing of a suit for compensation benefits.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiff, sustaining the exception of prematurity filed by defendant and dismissing this suit as of non-suit at plaintiff's costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed and rendered.