401 So.2d 575 (1981)
Melissa FREDERICKS, Plaintiff-Appellant,
v.
ASSOCIATED INDEMNITY CORPORATION, et al., Defendants-Appellees.
No. 8172.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
*576 Thomas & Dunahoe, Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellant.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendants-appellees.
Before CUTRER, STOKER and BIENVENU,[*] JJ.
STOKER, Judge.
This is a worker's compensation suit. Plaintiff, Melissa Fredericks, filed suit against her employer Country Pride Foods, Ltd., and its insurer, Associated Indemnity Corporation, seeking benefits for total and permanent disability and penalties and attorney's fees pursuant to LSA-R.S. 22:658. The defendants filed an exception of prematurity, an answer, and a rule to show cause why compensation payments should not be terminated. A hearing on the exception, the rule and the merits came up at the same time. After the hearing all matters were taken under advisement. In its written reasons for judgment the trial court sustained defendant's exception of prematurity but proceeded to render judgment on the merits. Plaintiff appeals. The defendants answered the appeal urging this court to affirm the trial court judgment sustaining the exception of prematurity and to reverse the judgment on all other points.
This lawsuit presents several issues. The first issue is whether this suit was premature at the time it was filed. Assuming the suit is not premature other issues include the defendant-insurer's liability for penalties and attorney's fees pursuant to LSA-R.S. 22:658 and the nature of plaintiff's disability.

FACTS
The plaintiff injured her back on December 5, 1978, while on the job at the Country Pride Foods, Ltd. plant in Natchitoches, Louisiana. Plaintiff continued working until late December 1978. Plaintiff underwent disc surgery on January 22, 1979. At *577 the time of trial on June 11, 1980, plaintiff had not returned to work.
Defendant-insurer began compensation payments in late December 1978 and continued to make these payments until April 12, 1980. From April 12, 1980, to May 6, 1980, plaintiff did not receive compensation. Plaintiff filed suit on May 2, 1980. On May 6, 1980, plaintiff received a check to cover the three week delinquent period.
The plaintiff specifies as error:
1. The trial court's action in sustaining the defendants' exception of prematurity;
2. The trial court's action in classifying plaintiff's disability as temporary, total disability; and
3. The trial court's failure to assess penalties and attorney's fees.
When this suit came before the trial judge the three matters pending included plaintiff's suit on the merits, defendants' exception of prematurity and defendants' rule to show cause why benefits should not be terminated. The trial judge referred the exception of prematurity to the merits. Tr. 21. A ruling on the exception of prematurity should have been made prior to trial on the merits. See LSA-R.S. 23:1314.[1] Although it was error for the trial court to proceed as it did, we do not consider the error as a ground for reversal under the peculiar circumstances of this case. In our opinion the exception of prematurity should have been overruled.

I.
LSA-R.S. 23:1314 provides that an employee's compensation suit shall be dismissed upon an exception of prematurity unless the petition alleges:
1. That the employee is not being paid or has not been paid the maximum percent of wages to which he is entitled;
2. That the employee has not been furnished the proper medical attention; or
3. That the employee has not been furnished with copies of the medical reports after a written request.
Plaintiff's petition contains the following paragraphs:

"X.
"She has been paid some workmen's compensation by the defendants and some of her medical expenses have been paid by the defendants. She does not know the exact amount of compensation she has been paid, nor the exact amount of medical expenses paid by the defendant."

"XI.
"Petitioner has given due notice to her employer and the insurer of her accidental injury and has made demand upon the defendants for compensation benefits which she is entitled to be paid under the Louisiana Compensation Statute. Despite such demand and notice of her injury and disability, the defendant is not now paying her and, in fact, refuses to pay her, the maximum workmen's compensation benefits to which she is entitled *578 to be paid under the Louisiana Workmen's Compensation Statute."
The Supreme Court in Patton v. Silvey Companies, 395 So.2d 722 (La.1981) interpreted LSA-R.S. 23:1314. In discussing possible interpretations of this statute the Supreme Court said:
"One possible construction of these provisions of R.S. 23:14 is that justification `under the facts' for the claimant's allegation of nonpayment concerns whether plaintiff is or is not being paid his compensation, whether the employer has or has not refused to pay. Thus, according to this interpretive version of the statute, most favorable to plaintiff, if he is not being paid at the institution of suit, his suit is not premature.
"An alternate interpretation which we consider more reasonable and appropriate is that justification `under the facts' coupled with the outset requirement, among others, that plaintiff must allege and prove `the employer has refused to pay' requires the court to determine more than simply whether plaintiff is receiving compensation; rather, the court must determine whether the employer has unreasonably determined to terminate benefits, or has unreasonably refused to pay.
"It is by virtue of the latter interpretation that Malone espouses and Jack v. Fidelity and Casualty Co. of New York, supra, has applied the three considerations noted above, namely whether there existed a reasonableness in ceasing to make payments, promptness in resuming them, and manifestation of a desire to cooperate.
"Because in a case such as this where suit is filed shortly after termination, a defendant's resumption of payment and manifestation of willingness to cooperate is possibly prompted by the plaintiff's institution of suit, with defendant attempting to enhance its defense of prematurity, and considering that the exception of prematurity `... must be determined according to the facts and circumstances which existed at the time the suit was filed6 ...', our focus is necessarily on only the first of the three considerations mentioned above, namely, whether defendant's termination of benefits was reasonable."
"6 Jack v. Fidelity and Casualty Co. of New York, 306 So.2d 806 (La.App. 3rd Cir. 1975). See also Malone, Louisiana Civil Law Treatise, vol. 14, § 383, p. 236 (1980)."

* * * * * *
We now proceed to determine whether defendant's termination of benefits was reasonable. Upon trial of this matter an employee of the defendant-insurer testified that compensation was not paid for a three week period because of "an oversight". See Tr. 81. Benefits were terminated because the insurer's computer was not programmed to continue printing compensation checks for the plaintiff.[2]
We do not feel that a termination based on this type of "oversight" is reasonable. We believe that the trial judge erred in sustaining the defendants' exception of prematurity.

II.
Since the trial judge referred the exception to the merits and evidence was adduced we have a complete record of the case before us. In our opinion a remand is *579 not necessary in this case we will proceed to discuss the issues raised by plaintiff's claim for compensation benefits. These issues include:
1. Whether the defendant-insurer was arbitrary, capricious or unreasonable in terminating benefits so as to be subject to penalties and attorney's fees pursuant to LSA-R.S. 22:658, and
2. Plaintiff's disability classification.
Plaintiff contends that the defendant-insurer is liable for penalties and attorney's fees pursuant to LSA-R.S. 22:658[3] because its failure to pay compensation from April 12, 1980, to May 6, 1980, was arbitrary, capricious or without probable cause. Plaintiff also argues that defendant-insurer is liable under LSA-R.S. 22:658 because of its failure to pay benefits on a weekly basis as demanded, its failure to pay a $45.00 hospital bill and its failure to tender medical travel expenses.
Having concluded in connection with the issue of prematurity that the defendant-insurer's failure to pay compensation for the period of April 12 to May 6 was unreasonable we find that its failure to pay was without probable cause. See Allor v. Belden Corp., 382 So.2d 206 (La.App. 3rd Cir. 1980).
As to plaintiff's demand for penalties and attorney's fees based on the defendant-insurer's failure to pay a portion of the hospital room charge and medical travel expenses we cannot say that the failure to pay was arbitrary, capricious or without probable cause. Prior to trial plaintiff did not demand medical travel expenses from the insurer. The failure to pay such amounts absent demand and verification of the expenses incurred by plaintiff does not subject the defendant insurer to liability for penalties and attorney's fees under LSA-R.S. 22:658. See Rodriquez v. American International Insurance Company, 394 So.2d 621 at 626 (La.App. 3rd Cir. 1981). Prior to trial plaintiff did demand from the insurer payment of a $45.00 hospital bill to the Natchitoches Parish Hospital which represented the difference between a private and a semi-private room, however, she did not at the time of demand furnish to the insurer any medical verification that it was necessary that she be housed in a private room. We do not feel that the insurer's refusal to pay this expense was arbitrary, as the insurer was not furnished with medical verification that a private room was a necessary medical expense. See Dove v. Liberty Mutual Insurance Co., 379 So.2d 1193 (La.App. 3rd Cir. 1980).
We hold that the defendant-insurer is liable for penalties and attorney's fees pursuant to LSA-R.S. 22:658 based on its failure to pay benefits from April 12, 1980, to May 6, 1980. Penalties of 12% attach to that delinquent amount. We award plaintiff attorney's fees of $5,000.

III.
The district court in this case found the plaintiff to be temporarily totally disabled. In holding that the plaintiff was temporarily totally disabled the court concluded:

*580 "The Court doubts whether plaintiff is suffering from permanent total disability since the deposition of Dr. William Wade Fox, III, an orthopedic surgeon who examined Ms. Fredericks, indicated that he believes that her chances for recovery are `... good or better than anticipated ...', and that she should be able to soon return to active labor type work. (depos. pg. 30)."
Dr. Fox, the orthopedic surgeon who performed plaintiff's disc surgery, last examined the plaintiff on November 20, 1979. A close reading of the deposition of Dr. Fox reveals that the trial judge incorrectly evaluated what Dr. Fox said about plaintiff's condition. For this reason we quote the following portion of Dr. Fox's deposition. See Deposition of Dr. William Wade Fox, III, taken on June 24, 1980, at pages 30 and 31.
"Q The recovery was as good or better than you anticipated it would be?
A Yes sir, especially in the early stages.
Q On the occasion of your last examination [November 20, 1979], you have previously expressed that in your medical opinion she should be able to resume active labor type work?
A Yes sir.
Q Is that right?
A Yes sir.
Q And is that your opinion today? [June 24, 1980.]
A Yes sir.
Q You didn't find any medical reason why she should not be able to resume her regular manual work, of course, accorded the fifteen percent residual disability that you assigned?
A That's correct.
Q And she should be able to do that without any continued substantial pain?
A That's correct.
Q And that she should experience no pain to the extent that it would be physically disabling to work?
A That's correct."
Following examination of the plaintiff on November 20, 1979, Dr. Fox discharged her and released her to return to work. At that time he estimated that plaintiff had a 15% partial permanent disability of the body as a whole. In the course of his deposition Dr. Fox admitted that his disability evaluation did not take into consideration plaintiff's specific employment. Dr. Fox only knew that plaintiff worked in a chicken processing plant. He did not know the physical activities required by plaintiff's job.
In a letter to counsel for defendants dated May 27, 1980, Dr. Fox stated that he felt plaintiff would continue to have intermittent slight pain while doing her work on the job and while doing housework but he did not feel that she would incur constant or substantial pain on the job. Again we note that at the time Dr. Fox wrote this letter he did not know the exact nature of plaintiff's job and the physical activity required in this job.
The lay testimony consisted of the testimony of plaintiff, the plaintiff's father and plaintiff's two sisters-in-law. The plaintiff's testimony revealed that she is in considerable pain five out of seven week days and that she can no longer do many of the physical activities she was accustomed to doing prior to her injury. Plaintiff testified that she cannot walk, stand, sit, or recline for long periods of time (not exceeding thirty minutes) without substantial pain. Plaintiff testified that she has frequent muscle spasms and "charleyhorses" and that these often interrupt her sleep. The testimony of the other lay witnesses revealed that plaintiff is not now as active as she was before the injury and that she has been forced to limit her physical activities because of pain. Plaintiff testified that she frequently takes Tylenol and Rela, a prescribed muscle relaxant, in order to relieve the pain. The other witnesses confirmed this testimony. Plaintiff testified that she could not do the work that she was doing prior to her injury at Country Pride Foods, Ltd., because of her inability to *581 stand for periods of time and her inability to lift, stoop and bend.
It is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. It is the trial judge's function to determine the weight to be accorded medical and lay testimony. Lay testimony is greatly probative of certain facts, such as the existence and location of pain and the ability of a compensation claimant to perform certain physical activities or to pursue regular employment. See Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La. 1975).
Considering all the evidence in this case, both medical and lay, we do not find that the trial court erred in concluding that the plaintiff is totally disabled. However, our review of the record reveals no evidence as to the duration of plaintiff's disability. Under the circumstances the trial court erred in holding that plaintiff was temporarily disabled. In a case where a worker's compensation claimant is totally disabled at the time of trial and the duration of the disability is indefinite or the evidence does not clearly indicate the duration of the disability, a judgment for total and permanent disability should be made. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Wiley v. Southern Casualty Insurance Company, 380 So.2d 214 (La.App. 3rd Cir. 1980). The correct judgment in the case before us is one of total and permanent disability.[4]
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it sustained defendant's exception of prematurity and the exception is hereby overruled. The judgment of the trial court will be amended to provide compensation for permanent total disability rather than temporary total disability and to provide for statutory penalties and attorney's fees.
IT IS NOW THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Melissa Fredericks, against Associated Indemnity Corporation for penalties as provided in LSA-R.S. 22:658 in the amount of 12% of the compensation which became due for the period of April 12, 1980, to May 6, 1980, dating from the due date of each payment, together with legal interest on such sums from the date of delinquency until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff and against Associated Indemnity Corporation in the sum of $5,000.00 attorney's fees. The judgment appealed is amended to award plaintiff weekly compensation based upon a forty hour week at $2.95 per hour for total and permanent disability for the period of the disability. All costs of this appeal are assessed against defendant Associated Indemnity Corporation.
REVERSED IN PART, AFFIRMED IN PART AND AMENDED AND RENDERED.
NOTES
[*] Judge C. Thomas Bienvenu, Jr., Sixteenth Judicial District Court, Parish of St. Martin, participated as Judge Ad Hoc in this decision.
[1] LSA-R.S. 23:1314 reads as follows:

"Unless in the verified petition above referred to it is alleged (where the petition is filed by the employee or his dependents) that the employee or the dependents is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which petitioner is entitled under the provisions of this Chapter, or that the employee has not been furnished the proper medical attention, or that the employee has not been furnished with copies of the reports of examination or examinations made by employer's medical practitioners after written request therefor has been made under the provisions of this Chapter, the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of nonpayment or of failure to render medical attention or failure to furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved."
[2] The explanation given by the insurer's employee establishes that the cessation in compensation checks was caused neither by clerical error or computer breakdown. After the insurer determined a claimant was due compensation it "fed" a certain number of weeks into the computer. Unless additional weeks were "fed" into the computer, the computer would cease issuing checks at the end of this period. Prior to the end of the period for which the computer had been programmed, the insurer's employee in charge of a claimant's file was required to review the claimant's disability status. If the claimant's status indicated that the disability would persist for sometime the computer was reprogrammed to add additional weeks. This procedure was repeated as long as the claimant remained disabled.

In this case the insurer's employee in charge of plaintiff's file failed to review the file and the computer ceased issuing checks at the end of the period for which it was programmed. This was human error, not computer error.
[3] LSA-R.S. 22:658 provides:

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
Amended by Acts 1958, No. 125.
[4] This judgment is subject to modification pursuant to LSA-R.S. 23:1331.