471 So.2d 1132 (1985)
Elmo VENABLE, Plaintiff-Appellant,
v.
RAWLINGS, INCORPORATED, Defendant-Appellee.
No. 84-541.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
Domengeaux and Wright, Anthony Moroux and Robert Tracy, Lafayette, for plaintiff-appellant.
Allen, Gooch and Bourgeois, Joel E. Gooch, Lafayette, for defendant-appellee.
Before GUIDRY, KNOLL and KING, JJ.
GUIDRY, Judge.
This is a suit for worker's compensation benefits, statutory penalties and attorney's fees. Plaintiff asserts that he is totally and permanently disabled by an occupational disease (chronic bronchitis and asthma).
Plaintiff brought suit against his employer, Orkin Exterminating Company, Inc. (Orkin),[1] on May 25, 1983, alleging that he was suffering from an acute asthmatic condition related to an infection derived from toxocara canis parasite. He further alleged that his exposure to this parasite resulted from his employment with Orkin. Plaintiff claimed that his condition was exacerbated by inhaling any type of noxious *1133 fumes, smoke or dust and that he was totally and permanently disabled.
Orkin answered the suit, denying that plaintiff was suffering from a disabling condition related to his employment. Orkin also filed a peremptory exception of prescription and/or peremption pursuant to La.R.S. 23:1209. The exception was referred to the merits.
This matter was tried on March 6, 1984. In his oral reasons for judgment, the trial judge denied Orkin's exception of prescription and/or peremption. By judgment dated March 27, 1984, the trial court found in favor of defendant, dismissing plaintiff's suit at his cost. Plaintiff appeals.
On appeal, plaintiff assigns the following specifications of error:
1. The trial court erred in ruling that plaintiff was not entitled to compensation benefits either under a theory of occupational disease or aggravating accident; and,
2. The trial court erred in refusing to grant statutory penalties and attorney's fees in light of defendant's unsupported denial of compensation benefits.
In his written reasons for judgment, the trial judge very thoroughly and succinctly set forth the facts of this case and the testimony adduced at trial. We take the liberty of quoting from the trial court's written reasons.
"The uncontradicted facts are that plaintiff, now forty-five (45) years of age, with only a sixth (6th) grade education, was employed by defendant in 1962 as a termite technician. He worked for defendant in that capacity for twenty-one (21) years until he terminated his employment on March 23, 1983. His job required that he mix chemicals which he would apply to slabs and pillars of houses by use of a hose connected to a compressor. A majority of the time, he was required to crawl beneath houses to apply chemicals to the pillars and was exposed to the ground and any substances thereon. He generally worked from 7:00 a.m. to 4:00 p.m. five (5) days per week. During his period of employment, he did not miss work frequently and then only when he was ill. He was considered by defendant to be an outstanding employee.
Plaintiff admitted that he had a cough and shortness of breath at least seven (7) years prior to his termination of employment but he contended that it was never so severe that he could not perform his job with defendant. He attributed the cause of his problem to parasites which he ingested while crawling beneath homes as well as his exposure to the chemicals which he used in his job. For many years he used Primetine Mist when he would develop a cough or shortness of breath. However, plaintiff never mentioned or complained to his employer or to his co-workers that inhaling chemicals or dust exacerbated his condition.
Mrs. Elmo Venable, wife of plaintiff, testified that her husband cannot do any physical activities because of his asthmatic condition due to his shortness of breath, coughing spells and inability to walk any appreciable distance. She further stated that when he returned from work on March 23, 1983, his condition was very bad and much different than his condition was at prior times.
In January of 1983, plaintiff was hospitalized for a routine hermorrhoidectomy after which the treating physician, reviewing plaintiff's chest x-rays, noticed spots on his lungs. He was referred to Dr. Phillip Perret, a physician specializing in lung diseases. At trial, plaintiff testified that on March 9, 1983, he returned to work at his usual job, and while in the course and scope of his employment with defendant while crawling beneath a home, he was exposed to chemical spray, which resulted in heavy wheezing and an asthmatic attack causing heavy bronchial difficulties. He returned to see Dr. Perret who treated him for approximately ten (10) days. Plaintiff also testified that he returned to work on March 23, 1983, and while performing his usual job beneath a house he started coughing as a result of the dust *1134 and chemical spray which he was subjected to. He stopped work and returned to Dr. Perret, who hospitalized him.
Dr. Perret performed lung function studies and in his opinion they showed a continuing deterioration of plaintiff's lung condition with severe spasms and obstruction. Plaintiff has continued under the care of Dr. Perret and was examined by him in June, July, and October, 1983, but his condition has not improved.

Plaintiff admitted that he started smoking cigarettes when he was eighteen (18) years old and has continued to smoke even to the date of this trial although he contends that he no longer smokes cigarettes, but does smoke an occasional cigar. This testimony is refuted by the history that he gave to the various doctors who examined him as well as the results of certain tests that were performed by Dr. William Brooks Emory, a lung specialist, during his examination of plaintiff on September 19, 1983. I therefore find that plaintiff smoked cigarettes on the average of one and a half (1½) packs per day together with an occasional cigar since he was eighteen (18) years of age, although I believe that after his asthmatic attack on March 23, 1983, he did reduce the number of cigarettes and/or cigars that he was smoking but, nevertheless has continued to smoke in spite of instructions to the contrary, given him by the doctors that have treated and/or examined him. Further, plaintiff for a long period of time has experienced coughing spells and shortness of breath, sometimes while performing his job with defendant and at other times when he is not exposed to chemical spray or dirt and dust beneath houses.

After reviewing the medical depositions and considering the lay testimony at the trial, it is clear that plaintiff has an asthmatic condition. The cause of his condition is not known. It may be hereditary or it may have been caused by his continuous exposure to chemicals, dust, or to smoking cigarettes and cigars. Dr. John Fruge, the family physician of plaintiff, has treated plaintiff two (2) or three (3) times for a rash but he had no way of knowing whether it was caused by a parasitic condition which he may (sic) contracted while working beneath houses. He also testified that he was never consulted by plaintiff for treatment of bronchitis or asthma.
Dr. Phillip Perret was of the opinion that, if plaintiff was subjected to a strong and concentrated exposure to chemicals on March 9, 1983, this could have exacerbated the asthma which resulted in his disability on March 23, 1983. However, Dr. Perret also stated that it was well accepted that smoking is one of the primary causes of chronic bronchitis and that it can aggravate asthma. He admitted that assuming that a person had been smoking for more than twenty (20) years, at the approximate rate of one and a half (1½) packs of cigarettes a day, this would be a substantial factor in causing chronic bronchitis and aggravation of the asthma which he diagnosed the plaintiff as having in January of 1983.
Dr. William Brooks Emory, a lung specialist and a witness of defendant, reviewed the x-rays and tests that Dr. Perret had performed on plaintiff and found that no evidence of a parasitic entity existed. Dr. Emory stated that in his opinion toxocara canis is not responsible for asthma and cannot be inhaled nor are the lungs able to take in such an organism and in his opinion, plaintiff's condition has deteriorated more from March, 1983 to September, 1983 than it had from January, 1983 to March, 1983. Further, his smoking would make a substantial difference in the exacerbation of his asthmatic condition." (Emphasis ours).
The trial judge, in well written reasons for judgment, disposed of the issues presented in this case as follows:
"In order for an employee to recover workmen's compensation benefits, the disability must result from the work-cause, *1135 either accident or occupational disease. See Crump v. Hartford Acc. & Indem. Co., supra.[2] To recover for an occupational disease, he must prove he contracted the disease during the course of his employment, and the disease was the result of the nature of the work performed. Page v. Prestressed Concrete Co., 399 So.2d 657 (La.App. 1st Cir.1981).[3]
Louisiana R.S. 23:1031.1(B) defines an occupational disease as follows:
`An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, or (sic) occupation, process, or employment in which the employee is exposed to such disease.'
The plaintiff has the burden of establishing the causal connection between the disability and the employment by a reasonable preponderence of the evidence. Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982). However, he does not have to prove causal connection to an absolute certainty. It is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. See Hammond, supra, and Bryant v. Magnolia Garment Company, Inc., 307 So.2d 395 (La.App. 2nd Cir.1975).
Determination of whether there is sufficient evidence of causation is a question of law, not fact, to be determined by the trial court, not by medical experts. In Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir. 1982), the court explained `expert testimony is not controlling inasmuch as courts cannot abdicate their decision-making responsibilities in favor of the medical profession but must consider all factors present in a case.' As the Louisiana Supreme Court stated in Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119 (La.1982) (sic).
`The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. Bertrand, supra at 828. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton, supra at 928.'
Therefore, an employee's claim for workmen's compensation benefits will be denied when there are other equally possible causes of his disease or disability not related to his employment. See Bryant v. Magnolia Garment Company, Inc., and Page v. Prestressed Concrete Company, supra.
Another legal principle applicable in this case was enunciated in the holding of Hebert v. Lake Charles American Press, et al, 427 So.2d 916 (La.App. 3rd Cir.1983), where the Court stated:
`A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident, the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition ... this presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it ... The fact that a condition is pre-existing (sic) does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that (sic) disease alone might have disabled the employee in it's (sic) ordinary course of progress is not the inquiry. The employee's disability is compensable if a pre-existing (sic) disease or *1136 condition is activated or precipitated into disabling manifestations as a result of a work accident ...
Furthermore, it (sic) is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor ...'."
In summary, the trial judge concluded as follows:
"After considering all of the evidence I am not convinced that plaintiff's present condition was more probably caused by inhalation of chemicals and/or parasitic entity than by his continued insistence on smoking cigarettes and/or cigars. The only testimony of the exacerbation of plaintiff's asthmatic condition during the periods of March 9th and March 23, 1983 is plaintiff's own self-serving statement that his condition was exacerbated after being exposed to chemicals. However, there was no testimony to prove that the chemicals that he mixed and was exposed to were such that would cause his condition to become severe. Additionally, and in line with the Hebert case cited above, plaintiff's condition since March 23, 1983 has not improved to any degree even though he is no longer exposed to chemicals, dust or other substances beneath houses. Yet, during this time, plaintiff continued to smoke. In the Court's opinion it is more probable that his cigarette and/or cigar smoking activated and caused his present disabling condition. It is less probable that his exposure to the chemicals which he used in his job and to the unclean conditions which he was exposed to beneath houses caused his condition. In conclusion, I find that plaintiff has failed to carry the burden of proof. Accordingly, judgment is hereby rendered in favor of defendant and against plaintiff rejecting his demands at his costs."
We first note that there is no evidence in the record to suggest that plaintiff's underlying asthmatic condition was caused by his repeated exposure to the chemicals employed by Orkin. The sole issue, therefore, is whether plaintiff's repeated exposure to the chemicals made asymptomatic or exacerbated his underlying asthmatic condition.
Plaintiff-appellant maintains that the trial court misinterpreted Dr. Perret's testimony and therefore should have found that the sole cause of the exacerbation of plaintiff's condition was due to his prolonged exposure to the chemicals. We disagree. Dr. Perret's deposition was clear that heavy smoking was just as likely to aggravate an asthmatic condition as was chemical exposure.
In seeking a reversal of the trial court's judgment, appellant principally relies on our decision in Hebert v. Lake Charles American Press, et al., supra. The Hebert case is factually similar to the instant case. In Hebert, the plaintiff-employee had worked for defendant, Lake Charles American Press, for over twenty-five years. Five years prior to his discharge, plaintiff began operating a photographic developing machine which utilized various chemicals. The operation of the machine required that plaintiff stand in close proximity to the blowers which dry the film.
Plaintiff claimed that since he started working with this new machine, he began suffering irritation to his eyes, a running nose, cough and reddening of the skin. He was diagnosed as having interstitual pneumonitis. After further testing, plaintiff's condition was diagnosed to be bronchial asthma. After being removed from his work environment, plaintiff's bronchial disorders continued to improve to the point where he was finally diagnosed as normal. This court reversed the trial court's refusal to grant plaintiff's request for worker's compensation benefits. We found in Hebert that the medical evidence, along with the sequence of plaintiff's symptoms, clearly established a causal connection by a preponderance of the evidence.
The present case is clearly distinguishable from Hebert. Plaintiff's condition did not clear up upon his removal from the Orkin work site. In fact, plaintiff's condition got increasingly worse from the time *1137 he ceased working in March of 1983 until the time when he was examined by Dr. Emory in September of 1983. Additionally, in Hebert, a toxicologist testified that he was familiar with the chemicals utilized in the developing machine and was aware of other cases of respiratory illnesses caused by such chemicals. In the present case, no such evidence of the Orkin chemicals' toxicity was presented at trial. Dr. Perret stated in his deposition that it was possible that exposure to toxic chemicals could exacerbate a pre-existing asthmatic condition, but that he could not say that the insecticides used by plaintiff were a contributing factor to his condition since he was unaware of the exact chemicals involved.
The trial court's factual findings as to disability are entitled to great weight and should not be disturbed unless clearly wrong. Culp v. Belden Corporation, 416 So.2d 1311 (La.App. 3rd Cir.1982), affirmed 432 So.2d 847 (La.1983). We are aware that medical and lay testimony must be considered in determining disability; however, it is the trial court's function to determine the weight accorded to that testimony. Fredericks v. Associated Indemnity Corporation, 401 So.2d 575 (La.App. 3rd Cir.1981). The trial court in this case was not clearly wrong in its determination that plaintiff has not carried his burden of proof.
It is well settled that if the evidence leaves the probabilities evenly balanced or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Page v. Prestressed Concrete Co., supra; Dunckleman v. T. Baker Smith & Sons, Inc., 447 So.2d 26 (La.App. 1st Cir.1984).
For the above and foregoing reasons, the judgment of the trial court denying benefits on the basis of occupational disease is affirmed. Plaintiff-appellant is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Named as defendant in the original petition was Rawlings, Inc. Plaintiff subsequently amended his petition to substitute as defendant Rollins, Inc. (a subsidiary of Orkin Exterminating Company, Inc.). Orkin Exterminating Company, Inc. answered the petition noting that it had been incorrectly cited as Rollins, Inc. This suit was thereafter maintained solely against Orkin Exterminating Company, Inc.
[2] 367 So.2d 300 (La.1979).
[3] Writ not considered, 401 So.2d 994 (La.1981).