DOUCET, Judge.
Carolyn Griffin appeals from the dismissal of her workmen’s compensation claim against Hartford Insurance Company and its insured, Don’s Seafood & Steakhouse of Alexandria, Inc. We affirm.
The plaintiff contends that she was injured in the left shoulder area on January 30, 1982 when she attempted to connect an electrical plug as she prepared to operate the “coleslaw” machine. It was stipulated that weekly compensation payments were made in the amount of $96.00 for seven weeks and two days following the accident. The medical expenses of $396.70 were also paid.
This appeal presents the question of whether the trial court erred in finding that the plaintiff had failed to prove her claim for further compensation benefits.
FACTS
The plaintiff, thirty years of age, testified that, after leaving her employment at a nursing home in Natchitoches, Louisiana, she obtained employment on January 28, 1982 at Don’s Seafood in Alexandria. She was assigned various duties in the kitchen. Two days after her employment began, she attempted to plug in a “coleslaw” machine and received an electrical shock. Her supervisor, Mrs. Shirley Rabalais, was standing in the immediate area and, upon inquiry, plaintiff told her that she had been shocked but would continue her work. Mrs. Rabalais plugged in the machine without difficulty and the plaintiff completed the day’s work. The following day, the plaintiff complained to Mrs. Rabalais of shoulder pain and she was sent to] the Rapides General Hospital to be checked. The hospital physician sent her to Dr. Jack C. Cappel, a specialist in general surgery. The plaintiff saw Dr. Cappel on February 5, 1982, complaining of pain in the left shoulder area.
Dr. Cappel testified by deposition that he saw the plaintiff on seven occasions between February 5, 1982 and March 24, 1982. He stated that a clinical examination revealed no objective findings that would explain her complaints. There was a full range of motion of the left arm and no spasm was present. On February 23rd, the plaintiff told this physician she was improving. Analgesics had been prescribed. As Dr. Cappel continued to see her, she informed him each time she continued to feel better. By March 24, 1982, the doctor felt that the plaintiff had recovered and released her to return to work. He stated that the plaintiff had no further disability or impairment. The plaintiff had no complaints when she was released.
The plaintiff notified Don’s Seafood that she had been released to return to work. Mrs. Rabalais offered her a job in the kitchen working the night shift. The plaintiff refused to work at night. She applied for unemployment benefits but was disqualified. She then obtained welfare for eight months even though she was living with her boyfriend who was employed by the City of Alexandria and she was employed by the Tioga Nursing Home beginning April 9,1982. Her duties at Tioga Nursing Home required her to do heavy lifting. She continued this work until March 19, 1983. Her supervisor at Tioga Nursing Home stated that the plaintiff did outstanding work and never complained of any difficulty.
The plaintiff quit working for Tioga Nursing Home when one of her friends was fired. She then secured employment with Annie Mae Mathews Nursing Home beginning June 13, 1983. Her supervisor at this nursing home, Lynda Lambdin, testified that the plaintiff worked as a nurses’ aid. This work required heavy lifting, such as turning patients, and otherwise lifting patients. The supervisor testified that her work at this nursing home was satisfactory and without complaint of the plaintiff. In her job application, the plaintiff failed to mention that she had worked for Don’s Seafood or Tioga Nursing Home. This omission was discovered by the personnel supervisor after plaintiff had worked eight *1297 months. For this omission she was discharged by Mrs. Lambdin.
During the time that the plaintiff was employed by the nursing homes as previously described, she was seeing Dr. Wallace Reynolds, a general practitioner, complaining of pain in the left shoulder and arm. This doctor testified that he saw plaintiff the first time on May 4,1982. She told him that the electrical shock had caused her to fall to the floor unconscious for a few minutes. Also, she stated that she was blinded for a short while. The statement that she was rendered unconscious and blind for a short period of time is subject to serious question. Mrs. Shirley Rabalais was standing near the machine and stated that the plaintiff yelled and jumped back when she attempted to plug in the machine. The plaintiff did not fall nor was she rendered unconscious by the shock. Mrs. Rabalais stated that as soon as it happened she talked to the plaintiff about the occurrence and observed no ill effects.
Dr. Reynolds saw the plaintiff on several occasions beginning May 4, 1982 through August 4, 1983. He found a large scar over the left trapezius clavicular and left chest area. This scar was caused by a knife wound incurred in 1980. He found some spasm in the neck area but otherwise the plaintiff was normal. He had some difficulty in ascertaining the cause of the spasm. He felt that it could be caused by an injured nerve and muscle group. He had the plaintiff examined by a neurologist on October 29, 1982, who reported that he found no decrease in the nerve function. He continued to see the plaintiff and each time her complaints were the same, headaches and pain in the left shoulder area. He stated that he continued to find spasm. Dr. Reynolds stated, however, that the plaintiff could perform her usual work. This physician was working under the impression that she had been rendered unconscious and blinded for a short while by the shock. As we have stated, the credibility of this history is subject to serious question. Also, we note that Dr. Reynolds examined the plaintiff for employment at Annie Mae Mathews Nursing Home on June 9, 1983. The report fails to reveal any physical impairment even though this physician was treating her at that time.
The plaintiff stated that, while she worked at the respective nursing homes following the accident, she was working in pain. She attempted to corroborate this testimony by some of her co-workers who testified that the plaintiff complained of shoulder problems on occasion. This latter testimony was drawn into serious question when these co-workers were confronted with statements given to Hartford’s adjuster where these witnesses stated generally that the plaintiff had performed her work without complaint.
The trial court, in dismissing the plaintiff’s claim, stated in part as follows:
“The Court is familiar with the general law pertaining to workmen’s compensation cases, and particularly appreciates the liberal attitude consistently prevalent in our jurisprudence favoring the injured worker. However, the law is also clear that even in workmen’s compensation cases the plaintiff must prove its case by a preponderance [sic] of the evidence. Without reciting all of the factual situations reflected by the evidence in this case, the Court is compelled to rule that the plaintiff has not met the burden of proof sufficient to sustain any recovery in this case.”
The trial court’s factual findings as to disability are entitled to great weight and will not be disturbed unless clearly wrong. Culp v. Belden Corporation, 416 So.2d 1311 (La.App. 3rd Cir.1982). We are cognizant of the fact that medical and lay testimony must be considered in determining disability; however, it is the trial court’s function to determine the weight to be accorded to that testimony. Fredericks v. Associated Indemnity Corporation, 401 So.2d 575 (La.App. 3rd Cir.1981). The trial court, in this case, was faced with a conflict of medical and lay testimony. The conflict was resolved in favor of the defendants and against the plaintiff. We cannot say *1298 that the trial court was clearly wrong in this conclusion.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.