420 So.2d 119 (1982)
Buering GUILLORY
v.
UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY.
No. 81-C-2471.
Supreme Court of Louisiana.
July 2, 1982.
*120 Guillory, McGee, Mayeux & Fontenot, Donald L. Mayeux, Eunice, for applicant.
James G. Dubuisson, Dubuisson & Dubuisson, Oplousas, for respondent.
CALOGERO, Justice.
In this worker's compensation case, a forty-two year old laborer with twenty-one consecutive years of apparent good health and essentially uninterrupted work record fainted at the conclusion of a strenuous work day. He was thereupon, for the first time, diagnosed as having had a long standing heart disease, aortic valvular stenosis.[1] The undisputed medical evidence was that 1) the fainting spell was caused by a combination of the stenosis and the stress occasioned by virtue of plaintiff's work that day, 2) the condition of his defective heart valve was not essentially different following the fainting incident than before the accident, 3) the diagnosed condition disabled plaintiff from returning to his accustomed work and 4) absent corrective heart surgery the prognosis was that plaintiff would not live another five years.[2]
The trial judge awarded plaintiff permanent and total disability benefits under the compensation law. The Court of Appeal in a five judge opinion with two judges dissenting reversed the trial court judgment and dismissed plaintiff's lawsuit upon finding no causal connection between the job accident and plaintiff's ensuing disability. 401 So.2d 543 (La.App. 3rd Cir. 1981). We granted writs on relator's application.[3]
For the reasons which follow, we reverse the judgment of the Court of Appeal and *121 reinstate the trial court judgment awarding total and permanent disability benefits.
Buering Guillory, an illiterate forty-two year old laborer, had been employed as a carpenter's helper for over twenty years working out of a labor union hall at different job sites around the state. When this incident occurred he was hired through Carpenter's Local 117 in Baton Rouge by defendant U.S.F. & G's insured (an employer whose name in the record is P.A.L.A.), and assigned to work at an Exxon construction site in Baton Rouge where his job was excavating and grading land with a pick and shovel just prior to the pouring of concrete slabs. Monday through Thursday of the week in question, he had worked alongside as many as five other laborers.
On Friday, December 15, 1978, however, he was required to work alone. He had awakened as usual at about 3:45 a.m. at his home in Lawtell, La. He rode a bus from Opelousas to Baton Rouge, and began working at approximately 7:30 a.m. About an hour later, he was assigned, alone, to dig out an area where three carpenters were waiting to build forms for another slab shortly to be poured. Guillory continued to work alone, and steadily, without a break, until noon, using a pick and then removing the debris with a shovel. After a half hour break for lunch, he resumed the same work until 3:30 p.m. As in the morning, he took no breaks; again he was working alone, and under pressure, because the carpenters were right behind him building the forms. By 3:30 p.m. he was very tired, more tired according to him than on any other day that he could remember. After he had put his tools in the shed and was walking toward the plant gate, he experienced dizziness, and then fainted. He remained unconscious for several minutes.
After an examination by an Exxon doctor, he was rushed to Baton Rouge General Hospital where he was treated by Dr. Boyd E. Helm, a cardiologist. Dr. Helm's diagnosis was syncope, or fainting, related to aortic valvular stenosis and caused by a deficiency in the amount of blood reaching the brain. The stenosis, or constriction, was brought on by the calcification of a defective valve over a period of years. The calcification was the result of an aortic valve disease which may have been congenital or may have been caused by other disease such as rheumatic fever, syphilis or bacterial infections at some earlier time in his life. On the day in question, the outflow valve from the left ventricular chamber of the heart had not opened wide enough to let sufficient blood pass through, and then had not completely closed, allowing some of the blood to rush back into the heart.
Dr. Helm advised Guillory to undergo a heart catheterization to determine whether surgery was needed to replace the valve, and/or to by-pass any of his coronary arteries. The prognosis, according to Dr. Helm, based on the presence of syncope (fainting) upon exertion, was a rapid progression of the stenosis and probable death within five years unless the valve were to be replaced. For reasons not entirely clear from the record, Guillory did not have the catheterization performed; nor the heart surgery which would evidently have been recommended after the catheterization.
Following his release from the hospital on December 19, 1978, Guillory remained under Dr. Helm's care for several months. On February 14, 1979, he began seeing Dr. Charles Fontenot, a general practitioner in Ville Platte, Louisiana; on May 24, 1979, Guillory consulted Dr. Donald Gremillion, an internist in Opelousas, Louisiana. Both doctors confirmed Dr. Helms' diagnosis of aortic stenosis, treated his continuing symptoms of dizziness, chest pain, shortness of breath, and weakness, and found him to be totally and permanently disabled.
The defendant insurer paid most of plaintiff's medical bills incurred at Baton Rouge General Hospital, but refused to pay the bills of Drs. Gremillion and Fontenot, the bills for medication, and any workers' compensation benefits whatsoever, contending that Guillory's disability was not caused by the accident of December 15, 1978.
Plaintiff sued for permanent and total disability compensation payments, medical *122 bills, penalties and attorney's fees. After trial on the merits, the trial judge concluded that "plaintiff has made out his case on the question of disability and causal connection with employment and should be awarded total and permanent disability." Defendant appealed suspensively and plaintiff answered the appeal requesting penalties and attorney's fees. In a three to two decision the Court of Appeal for the Third Circuit reversed the trial court's ruling on the merits and dismissed plaintiff's lawsuit with the order that he pay all costs in the trial and appellate courts.
In his writ application, and now in brief in this Court, plaintiff contends that the Court of Appeal erred in two respects; (1) in finding that there was no causal connection between the fainting spell and the disability; and (2) in not awarding penalties and attorney's fees.
Eligibility for worker compensation disability benefits in Louisiana is governed by R.S. 23:1021 et seq. In particular R.S. 23:1031 provides:
If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis supplied)
The requirements for a successful claim under this statute are thus personal injury which is the result of an accident, which accident in turn arises out of and in the course of employment. The Louisiana compensation act does not require that the employment cause the disability. The chain of causation required by the statutory scheme as adopted by the Legislature in R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability.
An accident is defined in La.R.S. 23:1021(1) as
... an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
It is conceded by the parties, and the Court of Appeal so held, that Guillory suffered an accident,[4] by statutory definition, on Friday, December 15, 1978, which accident arose out of and in the course of Guillory's employment for PALA at the Exxon construction site in Baton Rouge, Louisiana. Furthermore, it is conceded by all that Guillory was totally and permanently disabled following December 15, 1978. The Court of Appeal stated, supra at 545:
All three physicians testified the fainting spell on December 15, 1978, was probably causally related to the strenuous physical labor performed by plaintiff that day. Furthermore, all three were of the opinion that plaintiff is now permanently and totally disabled from performing strenuous physical labor. Under this expert medical testimony, defendant concedes that plaintiff suffered a job related accident on December 15, 1978, and that he is presently disabled.
It is the intervening link of causation that is disputed: that is, whether the disability followed and was caused by the fainting spell, or instead whether plaintiff's disabled condition pre-existed, and was not caused by, the fainting. The Court of Appeal, supra at 547, concluded that the causation required by Louisiana compensation scheme was not satisfied.
Thus, all three of the doctors testified plaintiff's pre-existing aortic valve disease was not aggravated or made worse by the fainting spell on December 15, 1978. This fainting spell was only a symptom which made the doctors aware of the pre-existing heart disease and that it had progressed to the point that it was disabling.
In other words, the defendant argued, and the Court of Appeal agreed, that although the accident chronologically preceded the diagnosis of the disability, it was only coincidental with and did not cause *123 that disability since the defective condition of the heart was essentially identical both shortly before and after the fainting spell.[5]
In resolving the question before us, i.e., whether plaintiff's condition caused his disability, several factors, some factual, some legal, bear upon our decision.
The first, factual considerations, relate to plaintiff's condition and work history.
1) Prior to the accident in question plaintiff was not disabled, i.e., he had been able to work hard for many years without an incident such as occurred on December 15, 1978.
2) After the accident he clearly was disabled, not only because diagnosed as having a heart disease but also because his physical condition had taken a substantial turn for the worse. The record clearly shows that following the accident he had frequent incidents of dizziness, chest pain, shortness of breath and weakness and that he could no longer perform hard labor.
The second set of considerations are the legal principles relating to the Louisiana scheme of workers' compensation.
1) Clearly a worker's pre-existing condition does not bar his recovery under the Louisiana Workers' Compensation statute. Guidry v. Serigny, 378 So.2d 938 (La. 1979); Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975). An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. Allor v. Belden Corp., 393 So.2d 1233 (La.1981) and cases cited therein at 1236. Furthermore it is immaterial that the diseased or weakened condition eventually might have produced death or disability outside the employment situation. See generally: Malone & Johnson, Workers' Compensation § 232, 13 La. Civ.Law Treatise 482.
2) The accident need not either cause or aggravate the disease which is the cause of the disability, nor adversely change a particular organ or organs of the body. In Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 at 827 (1969), this Court expressly rejected the proposition that "an accident must either cause or aggravate the disease which is the cause of the disability," a proposition which had been espoused in Nickelberry v. Ritchie Grocer, 196 La. 1011, 200 So. 330 (1941) and Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La.App. 3d Cir.) cert. denied 244 La. 398, 152 So.2d 63 (1963). Instead the Bertrand court stated:
The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen's Compensation law. Bertrand, supra [221 So.2d] at 828, quoted in Guillory, 401 So.2d at 550. (Domengeaux, J. dissenting) (Emphasis supplied)
3) Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. Allor, supra. The criterion for causal connection between the accident and the disability is: "has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?" Bertrand, supra at 827.
*124 4) The presumption referred to in number three above is rebuttable. Its effect is to shift the burden of proof to the defendant. The defendant bears the burden of coming forward with enough contrary evidence to rebut the presumption. Allor, supra; Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927 (La.1978).
5) The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. Bertrand, supra at 828. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton, supra at 928.
Taking into account all of the foregoing we find the following as to this plaintiff's accident and his disability:
1) Before the accident of December 15, 1978 plaintiff was not disabled, but rather able bodied and functioning.
2) He suffered a work-stress related accident contributed to in part by a pre-existing heart disease (aortic stenosis).
3) Following the accident he was disabled from performing work by virtue of his condition as well as because of his medical diagnosis (and prognosis).
4) His disability is presumed to have been caused by the accident.
5) Defendant did not rebut that presumption. While the accident admittedly did not change the stenosis, it did change the symptomatology and did worsen his condition.[6]
We therefore find that plaintiff's disability was caused, at least in part, by the accident.
We turn now to plaintiff's contention that he is entitled to penalties and attorney's fees.
The trial judge did not award plaintiff penalties and attorney's fees. Nor, however, did he address the issue of entitlement to penalties and attorney's fees in his judgment. The purpose of the penalty provision of the workers' compensation law is to discourage attitudes of indifference to the injured employee's condition. If the failure to pay compensation benefits is found to be arbitrary, capricious or without probable cause, penalties and attorney's fees may be awarded. Patton v. Silvey, 395 So.2d 722 (La.1981).
In this case, all parties agreed that Guillory suffered an accident in the course of and arising out of his employment. Furthermore, all agreed that Guillory was totally and permanently disabled after the accident. The defendant-insurer paid most of plaintiff's medical bills but denied that it owed the plaintiff compensation benefits, on the contention that there was no causal *125 connection between the accident of December 15, 1978 and the ensuing disability.
The Bertrand decision was rendered in 1969 and has been the prevailing law since then. Notwithstanding the rebuttable nature of the Bertrand presumption, the tenor of the strong facts and evidence of causality in this case make the defendant's refusal to pay compensation arbitrary and capricious.
We therefore award $5,000.00 in attorney's fees and penalties in accordance with La.R.S. 22:658 (12% of all past due amounts plus legal interest from the day on which each unpaid amount was due).

Decree
For the foregoing reasons the judgment of the Court of Appeal is reversed, the judgment of the district court is reinstated, but amended to include $5,000.00 in attorney's fees and penalties in accordance with law.
COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT AMENDED, AND AS AMENDED AFFIRMED.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents and assigns reasons.
LEMMON, J., dissents from the award of penalties and attorney's fees.
MARCUS, Justice (dissenting).
I do not consider that Guillory's disability was caused by his fainting (employment-related accident). Reason: defective condition of Guillory's heart valve was essentially the same before and after the accident. Fainting (accident) was merely a symptom of stenosis (defective heart valve). Hence, I consider Guillory's disability was caused by his heart condition not by his employment-related accident. Accordingly, I do not reach the issue of penalties and attorney fees. I respectfully dissent.
BLANCHE, Justice (dissenting).
This writer agrees that a worker's pre-existing condition does not bar his recovery under the Louisiana workmen's compensation statute. An employer takes a worker as he finds him. Assuming that plaintiff's disability is presumed to have been caused by the accident, the evidence in this case clearly overcomes such a presumption. The evidence is conclusive that aortic stenosis is a condition of the heart in which the aortic passageway for blood to leave the heart has become stenosedthat is, narrowed or constrictedso that the amount of blood that is pumped from the heart is less than is required. A fainting episode is a symptom of aortic stenosis. Due to the insufficiency of blood leaving the heart, there is a concomitant insufficiency of oxygen being delivered to the brain through the oxygen-carrying function of the blood's circulatory system and, when this occurs, fainting results. The evidence is overwhelming in that after plaintiff's fainting episode, he was in the exact same physical condition as he was before. Plaintiff's condition was not caused by his work or by any exceptional physical exertion. In no way did the fainting spell aggravate plaintiff's pre-existing aortic stenosis, which is the only cause of his disability.
It would seem that, if all three doctors testified that plaintiff's pre-existing aortic valve disease was not aggravated or made worse by the fainting spell, and the fainting spell was only a symptom that made doctors aware of the pre-existing heart disease, and that it had progressed to the point that it was disabling, then plaintiff should not be able to recover because he did not receive personal injury by accident arising out of his employment.
I agree with counsel for plaintiff that the case is almost identical to Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969), but would cite it for a different reason. Bertrand's duties on the job had nothing to do with his disability, and he should not have recovered as no accident caused his inability to work.
NOTES
[1] The disease is characterized by a constricted valve which restricts the amount of blood leaving the heart, and results in problems such as fainting, shortness of breath and/or chest pain. Additionally Guillory may have had aortic insufficiency, a secondary valve problem, involving a valve distortion whereby blood leaving the heart through the valve flows back into the heart, with necessarily ill effect.
[2] In fact plaintiff's condition caused his death about twenty-four months after the incident. Although the record as presently made up does not reflect that fact, this was told us during oral argument by counsel for plaintiff and conceded by counsel for the defendant.
[3] We also granted writs in two other cases concerning heart conditions, disability, and workers' compensation. Guidry v. Sline Industrial Painters, Inc., 410 So.2d 1129 (La.1982), and Adams v. New Orleans Public Service, Inc. (On rehearing) No. 81-C-0784, pending before this Court. The cases present three separate but interrelated questions. Here, in Guillory, there was clearly an accident occurring in the course of and arising out of the plaintiff's employment. The query presented to the court is whether the accident caused Guillory's subsequent disability. In Adams, the outset question is whether there was an accident on the job. If there was, the query becomes whether the job/work stress caused or contributed to the accident (angina). In Guidry, the plaintiff positively suffered an injury by accident (myocardial infarction followed by death) in the course of his employment. The query presented for the court's determination is whether that accident arose out of the employment, i.e., was caused by work related stress.
[4] External trauma is not necessary in order for an event to be considered an accident under Louisiana jurisprudence. See: Ferguson v. HDE, Inc., 270 So.2d 867 (La.1973).
[5] The argument in this regard is much like that presented in the angina pectoris/arteriosclerosis/heart disease cases such as Adams (See footnote 3, supra). In the aortic stenosis situation (the present case) work stress prompting an unsatisfied need for blood to the brain (because of aortic valve deficiency), precipitates syncope, or fainting. In the arteriosclerosis situation, work stress prompting an unsatisfied need for blood into the heart (because of clogged arteries) precipitates heart pain or angina pectoris. It is argued that fainting and heart pain are merely the symptoms of stenosis and arterioslerosis respectively.
[6] At the deposition of Dr. Helm, the following was recorded:

Q. Alright. Well, is there a changeif he is not having heart pain and he obviously wasn't if he had been working regularly, you know, like the history does show and prove, then that means he must have been getting enough blood to the heart as compared to now where he is having this heart pain and he must not be getting enough blood to the heart. Would that not be a change?
A. Well, it's a change. Yes, it's a change. He hasI think his symptoms have markedly increased and there has been a change in his symptoms.
Q. Since the accident of December 15th?
A. Since the accident of December 15th.
Q. So then that would be some changes in his body then, would it not?
A. But the question was the cause of the change, I think, andWhat's the question?
BY MR. DUBUISSON: Did the incident of 12/15 change
CONTINUATION OF RE-DIRECT EXAMINATION BY MR. MAYEUX:
Q. Of course, I didn't ask the initial question.
A. Okay
Q. I'm just trying to figure out hereI had understood that the question was is there any change in his body now as compared to before December 15th.
BY MR. DUBUISSON: That was not my question, but you can ask it.
Q. Okay, Well,
A. There is a change in his symptomatology and he has worsened since December 15th. (Emphasis provided)