449 So.2d 721 (1984)
Bernice YOUNG, Individually, and on Behalf of her Minor Children, Mark William Young, Kevin William Young, and Tina Marie Young, Plaintiff-Appellant,
v.
HERCULES, INC., Defendant-Appellee.
No. 83-554.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Writ Denied June 1, 1984.
*722 Baggett, McCall & Ranier, Drew Ranier, Cameron, for plaintiff-appellant.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Gregory P. Massey, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOMENGEAUX, Judge.
Plaintiff, Mrs. Bernice Young, wife of John W. Young, filed suit individually and on behalf of her three minor children on April 18, 1980, against Hercules, Inc., claiming entitlement to workers' compensation benefits for the period commencing with the death of her husband on November 16, 1979. On October 25, 1978, John Young had suffered a compound fracture of his left leg while working for his employer, Hercules, Inc. More than one year later, Mr. Young suffered an acute myocardial infarction and died.
Mrs. Young alleged that the heart attack was caused or precipitated by the accident which had occurred thirteen months earlier. Hercules, Inc. denied any liability.
The matter was tried and taken under advisement. In written reasons for judgment, the trial judge held that the plaintiff had not sustained the burden of proving that the heart attack resulted from the on-the-job accident thirteen months before. Plaintiff has devolutively appealed.

ISSUE
Appellant contends that the trial court erred in holding that the chronic and cumulative stress of the decedent's injury and the heart attack which occurred during the recuperative period were not compensable under Louisiana's Worker's Compensation Laws.

FACTS
On October 25, 1978, John Young sustained a compound fracture of his left tibia. He was admitted to St. Patrick's Hospital in Lake Charles, Louisiana, for surgery. The surgery involved an open reduction of the bone using plate fixation. After surgery and discharge, Mr. Young walked with the aid of crutches. The initial plating held the bone in place but the bone itself did not heal. Mr. Young's treating physician, orthopedist Edward Phillips, M.D., observed that after a six month period the bone had failed to heal properly. On May 8, 1979, Doctor Phillips surgically implanted electrodes to facilitate healing. Mr. Young continued to use crutches.
After the second surgery, Doctor Phillips found that the fracture had healed properly. X-rays taken on September 18, 1979, confirmed that the fracture had healed. However, the wound remained open and draining and was not healing; Doctor Phillips determined that the plate and the screws which had been inserted to repair the fracture were probably causing the wound drainage. On October 12, 1979, Mr. Young underwent a third operation for removal of the plate and screws. He remained in the hospital until October 15, 1979. His discharge from the hospital was followed by weekly visits to Doctor Phillips' office. On November 16, 1979, Mr. Young suffered a heart attack and died on arrival at the hospital.
The pathologist who performed the autopsy, Dr. Lehrue Stevens, determined the cause of death to be acute myocardial infarction due to or as the result of arteriosclerosis. Doctor Stevens determined that the coronary atherosclerotic condition (a stage of arteriosclerosis) was of long standing; the effects included a reduction of the oxygen supply to the heart by restricting the blood vessels, and a greater tendency of the blood to clot. The pathologist found that a thrombus, i.e., a blood clot had formed in a coronary artery which cut off all oxygen to a portion of the heart, producing an infarction and resultant death.
Plaintiff had several expert medical witnesses review the medical records of the decedent and the depositions of other medical experts in order to substantiate the claim that the stress involved, i.e., the failure of the injury to heal, the series of surgical operations, and the difficulty in *723 walking, were factors which contributed to the underlying arteriosclerotic condition and precipitated the fatal myocardial infarction.
Shea Halle, M.D., a chest physician and specialist in internal medicine, concluded that the progress of Mr. Young's coronary heart disease was hastened and aggravated by the stress associated with the 1978 accident, and the surgery and treatment in the year following. Doctor Halle stated that stress (both acute and chronic) significantly contributed to Mr. Young's death, along with thirty years of cigarette smoking and the possibility of hypertension. In his opinion, the initial surgery damaged Mr. Young's heart, as indicated by the contemporaneous hospital records and the autopsy results. However, Doctor Halle also admitted that Mr. Young would eventually have died from heart failure or vascular disease absent the stress factor.
During Mr. Young's first hospitalization following the accident (some thirteen months before he died), he complained of severe pain in the chest and abdominal area. Charles Woodard, M.D., a cardiologist, conducted a complete physical and cardiac examination of Mr. Young and determined that he was suffering from an ileus (a paralysis of the bowel frequently occurring after anesthesia and surgery). Doctor Woodard found that there was no symptomatic evidence of heart disease in the patient, and both his EKG results and the blood pressure readings were in the normal range. After this diagnosis Mr. Young was treated for several days and the pain resolved.
Doctor Woodard did state however that it was possible that stress played a minor role in precipitating the decedent's subsequent heart attack thirteen months later; but that in this particular patient there were more important major risk factors which contributed to his myocardial infarction.
John Phillips, Jr., M.D., a cardiologist and professor of medicine at Tulane University School of Medicine considered stress to be a major risk factor in both causing coronary artery diseases and aggravating pre-existing arteriosclerosis. Doctor Phillips, whose subspeciality is cardiovascular diseases, stated that the traumatic injury, the surgeries, the failure of healing, and the anxiety were all stress factors which caused Mr. Young's heart attack.
Jorge Martinez-Lopez, M.D., a cardiologist and professor of medicine at LSU Medical School, testified that trauma was not a factor in causing the heart attack. Doctor Martinez-Lopez, a specialist in cardio-vascular diseases, concluded that the accident in October, 1978, and the fatal myocardial infarction in November, 1979, were two separate medical incidents. He further stated that the accident had no relationship to the heart attack.
John Buttross, J.D., another cardiologist, corroborated the conclusion reached by Doctor Martinez-Lopez. He testified that stress did not play any causative role in the myocardial infarction.
In reviewing the testimony the trial court found that Mr. Young was not under any undue or extraordinary stress at the time of his death. Both Mrs. Young and Doctor Phillips (Mr. Young's treating physician) testified that Mr. Young remained optimistic about his leg and the healing process.
The trial court found that the plaintiff failed to establish by a preponderance of the evidence that there was a causal connection between the heart attack on November 16, 1979, and the accident of October 25, 1978. The suit was dismissed at plaintiff's costs; the fee of each doctor were fixed at $150.00 and taxed as costs.

CAUSATION, HEART DISEASE, AND WORKER'S COMPENSATION
The doctrine of causation has been applied to determine entitlement to compensation. The employee's disability is presumed to have been caused by the accident. Haughton v. Fireman's Fund American Insurance Co., 355 So.2d 927 (La.1978).
"There is no presumption, however, that a vascular accident occurring on the *724 job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
This burden of plaintiff's is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident. Anything less and it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident.
If the physical exertion, stress, or strain on the job, and preceding the infarction, is no more than the worker would likely have experienced in a non-work situation, the attack may be the result of the natural progression of the pre-existing disease rather than the result of the employment activity."
Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). The case sub judice requires consideration of the causal connection not between the accident and the injury but rather between the job accident, the ensuing injury, and decedent's fatal heart attack.
Under Louisiana Worker's Compensation Law the accident need not either cause or aggravate the disease which is the cause of the disability, nor adversely change a particular organ of the body. Guillory v. U.S.F. & G. Ins. Co., 420 So.2d 119 (La.1982). The Louisiana Supreme Court has explained the legal requirements which must be established:
"The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen's Compensation law. Bertrand, supra [221 So.2d] at 828, quoted in Guillory [v. U.S.F. & G. Ins. Co.] 401 So.2d [543] at 550 [La.App.1981]. (Domengeaux, J. dissenting) (Emphasis supplied)."

Guillory, at 123.
In the instant case, the trial judge found that, based upon all the medical evidence presented, that Mr. Young's fatal heart attack was not compensable under La.R.S. 23:1021 et seq. because the plaintiff failed to establish causal connection between the accident and the disability, i.e., the stress of the accident (a residual condition) did not produce a change or substantially increase the possibility of the deceased's fatal episode. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968). The trial judge found that the expert medical testimony did not establish a reasonable possibility of such a connection. Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982), on rehearing, 418 So.2d 490, citing Allor v. Belden Corporation, 393 So.2d 1233 (La.1981). The court did reach the ultimate determination that Hercules rebutted the presumption and came forward with sufficient contrary evidence to prove that Mr. Young's heart attack was not work-stress related, but rather it was the result of progressive coronary artery disease.
The findings of the trial judge are entitled to great weight, and will not be disturbed except upon a showing of manifest error. Deville v. Port Pipe Terminal of Louisiana, Inc., 419 So.2d 16 (La.App. 3rd Cir.1982), writ denied, 422 So.2d 424 (La.1982). The trial judge had the opportunity to view and evaluate the conclusions of the medical specialists and make a factual finding that the evidence offered was inadequate in order to sustain the plaintiff's burden of proving causation or change.
We have engaged in a thorough review of the record in this case, and the applicable statutes and jurisprudence. We find no manifest error in the trial judge's *725 careful consideration of the conflicting medical testimony; he analyzed all the expert evidence adduced at trial and concluded that plaintiff failed to establish with any reasonable certainty a causal connection between the accident and the heart attack. We cannot say that the trial judge abused his discretion in dismissing plaintiff's claim.

DECREE
For the above and foregoing reasons the judgment of the trial court is affirmed, with appellate costs assessed against the appellant.
AFFIRMED.