503 So.2d 1131 (1987)
Warren ALFRED, Plaintiff-Appellee,
v.
CITY OF EUNICE, et al., Defendants-Appellants.
No. 86-285.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Writ Denied April 23, 1987.
*1132 J. Winston Ardoin, Eunice, for defendants-appellants.
Guillory, McGee and Mayeux, A. Frank McGee and Gerard Caswell, Eunice, for plaintiff-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
This is an appeal from a judgment awarding worker's compensation and related benefits, along with statutory penalties and attorney's fees. We affirm.
Plaintiff, Warren Alfred, instituted this suit against ABC Insurance Company and *1133 the City of Eunice. Prior to trial on the merits, it was stipulated that, at the time of plaintiff's accident, the City had no insurance coverage. Therefore, the suit proceeded against the City of Eunice as the sole defendant. It was also stipulated that plaintiff was acting within the course and scope of his employment with the City of Eunice at the time of his accident and that his effective compensation rate at that time was $120.35 per week.
Following trial on the merits, judgment was rendered in favor of plaintiff, awarding him temporary total workmen's compensation benefits from the date of accident, plus statutory penalties and attorney's fees in the amount of $3,500.00. The City of Eunice was given credit for the benefits previously paid to plaintiff, i.e., $120.35 per week from the date of accident until March 7, 1983.
Defendant appeals urging that the trial court erred in (1) finding that plaintiff was totally disabled after the date of discharge by his attending physicians; and, (2) concluding that the City was arbitrary, capricious and without probable cause in terminating plaintiff's benefits on March 7, 1983. Plaintiff answered the appeal seeking an increase in attorney's fees from $3,500.00 to $7,500.00.
On January 15, 1982,[1] Warren Alfred was working as a laborer in the street department of the City of Eunice. On that day, while cleaning out ditches, Alfred injured his right hand when the shovel he was using apparently struck a hard object, causing something to "pop" in his right hand.
Alfred was initially treated, on January 24, 1982, by Dr. Rodney E. Landreneau, Jr. On that date, Alfred was complaining of pain in his wrist and the fingers of his right hand. X-rays taken of Alfred's hand revealed no fracture or dislocation. Dr. Landreneau found tenderness and signs of local swelling. Alfred's right hand was placed in a splint and he was given medication for pain and swelling.
Thereafter, Dr. Landreneau treated Alfred on a regular basis for the following year. Dr. Landreneau discharged Alfred from his care on three separate occasions only to have him return with renewed complaints of pain and discomfort. On April 2, 1982, Alfred complained to Dr. Landreneau that he had returned to his job with the City of Eunice, but that after two hours of work he had to discontinue his work because of swelling and pain in his right hand. Dr. Landreneau concluded that Alfred had a chronic ligamentous injury to his right wrist and referred him to Dr. Ladislas Lazaro III, an orthopaedic surgeon in Opelousas.
Alfred was examined by Dr. Lazaro on April 15, 1982. Dr. Lazaro noted tenderness and severe pain at the level of the carpal, metacarpal joints of the index and long fingers of the right hand. The x-rays performed on the hand demonstrated some arthritic spurring in the lateral view over that area. Dr. Lazaro discussed with Alfred the possibility of a basilar carpal fusion (a fusion of the involved joint). A bone scan taken of the hand produced negative results.
On July 26, 1982, Dr. Lazaro performed the basilar carpal fusion on Alfred's right hand. Alfred's hand was placed in a cast following the surgery. Once out of the cast, Alfred underwent physical therapy. Alfred continued to see both Dr. Lazaro and Dr. Landreneau and appeared to be progressing satisfactorily. However, on October 25, 1982, Alfred returned to Dr. Landreneau with complaints of much pain on movement of his right wrist. Dr. Landreneau found no swelling but did note substantial weakness of the wrist.
Dr. Lazaro concluded that the initial surgery was unsuccessful and on January 18, 1983 performed a second surgery on Alfred's right wrist. Dr. Lazaro removed some scar tissue from the wrist area which *1134 he concluded was causing Alfred's continued complaints of pain.
Alfred was seen a final time by Dr. Lazaro on February 21, 1983. At that time, Dr. Lazaro concluded that Alfred had reached a plateau and was ready to return to work without any restrictions. Dr. Lazaro assigned Alfred a 15% impairment, because of the fusion of his right wrist, and opined that Alfred's hand should be free of pain from three to eight weeks of his return to work. Dr. Lazaro would not speculate on the cause of any complaints of pain Alfred may have had after the February 1983 visit.
Alfred saw Dr. Landreneau the day following his discharge by Dr. Lazaro complaining of pain and numbness over the incision site and weakness in his right hand. Dr. Landreneau found a 50% weakness in Alfred's right hand grip. Upon being advised that Dr. Lazaro had discharged him from his care, Dr. Landreneau also advised Alfred to return to work. Dr. Landreneau told Alfred to return to see him in three weeks if the pain persisted. Alfred did not return to either Dr. Landreneau or Dr. Lazaro. Dr. Landreneau assigned a 30% disability to Alfred's right wrist.
Dr. Landreneau testified that Alfred's continued complaints of pain could possibly relate either to an inadequate or failed fusion of the wrist or entrapment of the tendons from a very heavy scar formation. If either of these were the causes of Alfred's complaints of pain, Dr. Landreneau opined that further surgery would be necessary.
The deposition of Joseph Cashen, the physical therapist who worked with Alfred, was introduced into evidence. Cashen treated Alfred in March of 1982, at which time he found Alfred sensitive to pain in the area of the right wrist. Cashen noted some diminished grip strenth at that time. Cashen again treated Alfred in November of 1982, following Alfred's first surgery. Cashen noted that there was some decreased range of motion in his right hand, along with some decreased grip strength. Alfred underwent therapy for approximately two weeks.
On February 1, 1983, Dr. Lazaro again referred Alfred to Cashen for physical therapy. At this time, Alfred complained to Cashen of continued pain in his right wrist. Alfred's grip strength was still greatly diminished in his right hand as compared to his left. Alfred received therapy from Cashen until March 5, 1983, when Dr. Lazaro informed Cashen that Alfred required no further therapy.
Cashen concluded that, at the time Alfred was released from his care, he would have problems with the use of his right hand for heavy manual labor. Cashen opined further that Alfred would have difficulty using a shovel or other tools of that type and fatigue would also be a problem for him.
On May 11, 1983, Alfred was seen by Dr. Thomas C. Laborde, a physiatrist. Alfred complained to Dr. Laborde of a sharp stabbing pain in his right hand, which radiated towards the elbow. Alfred told Dr. Laborde that the pain always worsened with increased activity. Dr. Laborde's examination revealed abnormal findings mostly in the hand and wrist area. Although there was no significant limitation of motion noted, there was tenderness and sensitivity along the scar on the dorsum of the right hand. Dr. Laborde noted some relative weakness in the right hand and hypersensitivity over the area of the scar. Dr. Laborde found that Alfred had a chronic right hand pain with relative decrease of grip strength. Dr. Laborde advised Alfred to return, for a more specific recommendation, after he had a chance to review the reports from Drs. Lazaro and Landreneau. Dr. Laborde saw Alfred again on June 1, 1983, prior to having received and reviewed the reports of Drs. Lazaro and Landreneau. At that time, Dr. Laborde suggested that Alfred undergo certain EMG and nerve conduction studies. These tests were never performed because the City would not agree to pay the cost thereof. At his last examination, Dr. Laborde concluded that Alfred was not able to perform any manual labor and other factors should be explored *1135 to determine the exact cause of Alfred's pain.
Alfred was 40 years old at the time of the accident. Although he had completed high school, he possessed no vocational or special training. He testified that he performed only manual labor since he finished high school and had worked for the City of Eunice six to seven years prior to his accident. Alfred is right-handed.
Alfred testified that he continues to suffer with pain and swelling in his right hand and wrist and that he has problems with the strength in that hand. Alfred stated that when he returned to work in February, 1983, after about three hours he had to stop because of the pain. Alfred has not worked since that time and stated that he does not feel that he could perform work with a shovel again.
Finally, Alfred stated that he did not return to see Dr. Landreneau because he was told by the City that they would not pay for any further visits. He also stated that he did not undergo the tests recommended by Dr. Laborde because of the City's refusal to defray the cost thereof.
Defendant-appellant first urges that the trial court erred in finding Alfred to be totally disabled after the date of discharge by Drs. Lazaro and Landreneau.
In his written reasons for judgment, the trial judge concluded:
"From the testimony of all the witnesses, including the plaintiff, the court is able to conclude that the plaintiff suffered work related injury that rendered him totally disabled from engaging in any gainful occupation for wages for which he was suited by reason of education, training, and experience. LSA-R.S. 23:1221(2).[2] The only issue of disability is whether it persisted after plaintiff's last discharge by Dr. Lazaro and Dr. Landreneau.
Further, the court finds that plaintiff's total disability continued after his discharge by Dr. Lazaro and Dr. Landreneau. Plaintiff continues to suffer pain and diminished strength in his right hand. He was not contradicted in this respect. Thus, plaintiff's disability persisted through the date of trial, but the court cannot make a decision on the permanent nature of disability."
The findings of the trial judge are entitled to great weight and will not be disturbed except upon a showing of manifest error. Young v. Hercules, Inc., 449 So.2d 721 (La.App. 3rd Cir.1984), writ den., 450 So.2d 969 (La.1984); Macon v. Hunt-Wesson Foods, Inc., 477 So.2d 793 (La.App. 5th Cir.1985). Both medical and lay testimony must be considered in determining disability; however, it is the trial court's function to determine the weight accorded to that testimony. Venable v. Rawlings, Inc., 471 So.2d 1132 (La.App. 3rd Cir.1985), writ not considered, 476 So.2d 340 (La. 1985).
We conclude that the trial court's finding that plaintiff was unable to work without substantial pain following his discharge by Drs. Lazaro and Landreneau and continuing to the date of trial is not clearly or manifestly wrong. The trial court's evaluation of the credibility of the various witnesses, including the weight apparently accorded the testimony of Dr. Laborde and the physical therapist, Mr. Cashen, will not be disturbed.
Appellant next argues that the trial court erred in finding it to be arbitrary and capricious and without probable cause when it terminated Alfred's compensation benefits and medical expenses.
La.R.S. 22:658 was the applicable law in effect at the time of the accident. In Olson v. Insurance Company of State of Pennsylvania, 471 So.2d 1151 (La.App. 3rd Cir.1985), writ denied, 476 So.2d 352 (La. 1985), this court interpreted La.R.S. 22:658 to mean that:
"... a compensation insurer is liable for a twelve percent penalty on unpaid compensation sums to which the worker *1136 is legally entitled, plus "reasonable" attorney fees for the collection of that sum, should the insurer not pay that sum to the worker within sixty days of the worker's claim, provided that such refusal to pay is `arbitrary, capricious, or without probable cause.'"[3]
In its written reasons for judgment, the trial court stated as follows in support of its award of penalties and attorney's fees to plaintiff:
"Benefits, both weekly and medical, were terminated by Mr. Sam Guillory, the Safety Engineer for the city. Mr. Guillory said he terminated plaintiff's benefits based on Dr. Lazaro's last report, which was discussed previously. He acknowledged he didn't want plaintiff returning to work and aggravate or increase the 15% disability to 30%; therefore, he offered plaintiff $1600.00 to settle the case. Mr. Guillory never denied or contradicted plaintiff's testimony that the city would not pay for the tests Dr. Laborde had suggested. Had these tests been performed, they may have established what was causing plaintiff's pain and how it could have been relieved under those circumstances. The City's termination of plaintiff worker's compensation benefits was arbitrary, capricious and without probable cause, and it has, therefore, subjected itself to statory [sic] penalties and attorney's fees...."
The City of Eunice was clearly entitled to terminate compensation and related benefits following receipt of the Lazaro and Landreneau reports releasing plaintiff for work without any restrictions. However, following plaintiff's discharge, the City was made aware of the fact that plaintiff continued to complain of substantial pain which was disabling and was being treated by Dr. Laborde, who had recommended certain diagnostic tests (EMG and nerve conduction studies) to determine the etiology of the pain. The record reflects that the City, although furnished with copies of Dr. Laborde's reports, refused to authorize performance of the tests and chose to adamantly rely on the Lazaro and Landreneau reports. In choosing to follow this latter course, the employer was arbitrary and capricious. In Johnson v. Insurance Company of North America et al., 454 So.2d 1113 (La.1984), a case involving a similar factual scenario, the court stated:

"II. Penalties and Attorneys' Fees.
The insurer was entitled to terminate compensation benefits on January 8, 1982, relying on Dr. Gamburg's letter releasing Johnson for full duty. Oregeron v. Tri-State Road Boring, Inc., [434 So.2d 65 (La., 1983)] supra. The question is whether Dr. Laborde's report, which was received by the insurer on May 4, 1982, required reinstatement of benefits or a further investigation into Johnson's condition. Walker v. Gaines P. Wilson & Son, Inc., [340 So.2d 985 (La., 1976)] supra. Although Dr. Laborde's report did not specify that Johnson was disabled, it noted that he had "continuing difficulty on the basis of soft tissue scarring and fibrosis and possibly muscular deconditioning and tightness." Dr. Laborde recommended a "vigorous physical therapy program." Although the insurance company's claims supervisor was not arbitrary in failing to reinstate benefits on the basis of this report, she was arbitrary in giving it no credence whatsoever. After receiving Dr. Laborde's report, Ms. Sorsby should have either: (1) authorized the recommended physical therapy, or (2) obtained an updated medical report indicating the therapy was unnecessary. Ms. Sorsby did not have probable cause to completely disregard Dr. Laborde's report, while *1137 recognizing that it conflicted with that of Dr. Gamburg. Guillory v. Travelers Insurance Co., [294 So.2d 215 (La.1974)] supra. However, the physical therapy was authorized within a sixty day period, apparently on advice of counsel, and the insurer is therefore not liable for penalties and attorneys' fees. LSA-R.S. 22:658."
In the instant case, the City's only response to Dr. Laborde's report was an offer to settle for $1,600.00. As in Johnson, supra, after receipt of Dr. Laborde's report, it was incumbent on the City to authorize the recommended tests or obtain an updated medical report confirming the continued viability of the Lazaro and Landreneau conclusion that plaintiff was able to work without restriction. Its failure to follow either course was arbitrary and capricious.
In his answer to the appeal, plaintiff seeks an increase in the amount of attorney's fees awarded by the trial court. When attorney's fees are awarded in a worker's compensation case because of arbitrary and capricious nonpayment of benefits, the attorney's fees are deemed to be a penalty, and the value of such need not be proven. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). A trial judge is allowed to call upon his own experience and expertise in determining how much time and effort a lawyer has put into the preparation of the case. Louque v. Jack Eckerd Drug Store No. 523, 405 So.2d 1097 (La.App. 4th Cir.1980). Under the circumstances of the instant case, we find that the trial court's award of attorney's fees in the amount of $3,500.00 is adequate. However, we find that plaintiff is entitled to an additional award of attorney's fees for services on appeal in the amount of $750.00.
For the above and foregoing reasons, the judgment of the trial court is amended so as to increase the attorney's fee award to the sum of $4,250.00. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
NOTES
[1] At various places in the record, including plaintiff's petition for damages and the trial court's judgment and reasons for judgment, the date of the accident is said to have occurred on January 15, 1981. However, the preponderance of the evidence presented at trial indicates that the accident actually occurred on January 15, 1982.
[2] As the accident in question occurred on January 15, 1982, it is controlled by the worker's compensation statutes as they existed prior to Acts 1983, 1st Ex.Sess., No. 1, § 1, effective July 1, 1983.
[3] The law was changed by the 1983 amendments to the worker's compensation statutes. Under La.R.S. 23:1201.2, the standard for the imposition of attorney's fees has remained the same, i.e., whether the employer was "arbitrary, capricious, or without probable cause". However, under La.R.S. 23:1201(E), the standard for assessing penalties against the employer has changed. See our discussion in Chelette v. American Guarantee and Liability Ins., Inc., 480 So.2d 363 (La.App. 3rd Cir.1985).