709 So.2d 975 (1998)
Joe R. HODGES, Plaintiff-Appellee,
v.
QUAIL TOOLS, INC., Defendant-Appellant.
No. 97-1340.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
*976 David Charles LaBorde, Jeanne M. LaBorde, Lafayette, for Joe R. Hodges.
Sammie M. Henry, Baton Rouge, for Quail Tools, Inc.
Before DOUCET, C.J., and COOKS and WOODARD, JJ.
DOUCET, Chief Judge.
Defendants, Quail Tools, Inc. (Quail), Plaintiff's employer, and Louisiana Workers' Compensation Corporation (LWCC), Quail's workers' compensation insurer, appeal an August 19, 1997 judgment of the workers' compensation judge confirming a preliminary default entered July 28, 1997. The judgment ordered Defendants to pay $1,770.57 in past due benefits, to pay for "all reasonable and necessary medical treatment related to Mr. Hodges' cervical spine," to increase Plaintiff's temporary total disability benefits from $307.00 to $324.39, effective September 1, 1997, to pay twelve percent penalties on all amounts due under the judgment, to pay $1,000.00 in attorney's fees and to pay legal interest from date of demand. Plaintiff answered Defendants' appeal seeking damages for frivolous appeal. We reverse in part and affirm in part.

FACTS
Plaintiff filed a "Disputed Claim for Compensation" with the Office of Workers' Compensation on April 16, 1997. The claim form reveals that Plaintiff was injured during the course and scope of his employment with Quail as a "hot-shot" driver on July 25, 1993. Thereafter, he began receiving compensation in the amount of $307.00 per week. The claim was filed when Defendants denied Plaintiff treatment for cervical injuries he allegedly sustained in the 1993 accident and when Defendants reduced Plaintiff's benefits from Temporary Total Disability (TTD) benefits to Supplemental Earnings Benefits (SEB).
Defendants signed a "Waiver Of Citation And Acceptance Of Service" form on May 5, 1997. Thereafter, on July 28, 1997, a preliminary default was entered against Defendants. On August 14, 1997, a hearing was held and the preliminary default rendered in Plaintiff's favor was confirmed.

*977 LAW AND DISCUSSION
The procedure relevant to obtaining a default judgment is found in La.Code Civ.P. art. 1702, which states in pertinent part as follows:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
In State v. Fifteen Thousand Four Hundred Thirty-One Dollars & Other Property, 95-1334, p. 4 (La.App. 3 Cir. 3/6/96); 670 So.2d 693, 695-96, this court quoted the Second Circuit approvingly:
Appellants further contend that the state, in confirming the default judgment, did not establish a prima facie case....
The second circuit, in Meshell v. Russell, 589 So.2d 86, 88 (La.App. 2 Cir.1991), set forth the burden of proof in confirming a default judgment, as follows:
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. LSA-C.C.P. art. 1702. The jurisprudence construing this article has held that in confirming a default plaintiff must prove all of the essential allegations of his petition as fully as if they had been specifically denied. In other words, plaintiff must present competent evidence she probably would have prevailed at a trial on the merits. In order to obtain reversal of a default judgment, defendant must overcome the presumption that the judgment was rendered upon sufficient evidence. In reviewing a default judgment, an appellate court is restricted to a determination of the sufficiency of the evidence offered in support of the judgment. The presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where the testimony is transcribed and contained in the record. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment is based was sufficient and competent. [Emphasis added.]
See also Byrd v. International Paper Co., 594 So.2d 961 (La.App. 3 Cir.1992); Rhodes v. All Star Ford, Inc., 599 So.2d 812 (La.App. 1 Cir.1992).
See also Holbrook v. Palermo, 352 So.2d 419 (La.App. 3 Cir.1977). Accordingly, we have examined the whole record and find as follows.
Plaintiff was injured in the course and scope of his employment as a "hot-shot" driver, when the company truck he was driving was forced off of La. Hwy 1 and into a canal by a phantom vehicle on July 25, 1993. He has neither worked nor been offered employment since that time. He was initially seen by a company doctor, and on August 26, 1993, he was first seen by Dr. Louis Blanda, who is his treating physician. Dr. Blanda first treated Plaintiff for left knee problems and then for low back symptoms. Dr. Blanda's notes indicate that he attributed both injuries to Plaintiff's accident of July 1993. The low back injury eventually required surgery on December 13, 1995. LWCC approved and paid for the treatment of Plaintiff's knee and low back problems. In January 1996, Plaintiff reported increased pain in his leg "so bad he just can't stand it anymore" to Dr. Blanda. Thereafter, his condition slowly improved. Dr. Blanda's progress note of July 16, 1996, which we find significant, reads as follows:
Mr. Hodges is having a little of a set back with his low back. Apparently he has had some increased back pain recently and says he has been having some neck pain for the last 6 months. I X-rayed his neck and he has diffuse degenerative disk disease at multiple levels. I am going to have him do some physical therapy on his neck as well as his lower back and will see him again in about one month. [Emphasis added.]
Dr. Blanda's last progress note, dated August 20, 1996 states:
Mr. Hodges is still having a lot of neck pain. His low back really isn't giving him that much trouble but he is having radiating pain into his right arm with numbness. He has numbness in the C7 dermatone [sic] as well as a depressed right triceps *978 reflex compared to the left. Spurling's also causes right arm and shoulder pain. We are going to get an MRI on him to see wether or not he has a discogenic source of pain.
Dr. Blanda's records do not show that he ever discharged Plaintiff or released him to return to work.
Mr. Hodges testified in accord with the foregoing. Additionally, he stated that Dr. Blanda was treating him for one problem at a time, and the current problem was his neck. He further stated that LWCC had refused to pay for the cervical MRI referenced in Dr. Blanda's progress note of August 20, 1996, and that Dr. Blanda had not been paid for that last visit. A bill from Dr. Blanda substantiated this allegation. Plaintiff's medical records reveal no independent or LWCC requested examination of Plaintiff's cervical spine.
Accordingly, we find no error in the workers' compensation judge's ordering Defendants to pay for all necessary and reasonable medical treatment related to the injury to Plaintiff's cervical spine.
Mr. Hodges also testified that beginning April 1, 1997, LWCC reduced his benefits from TTD to SEB. Check stubs from LWCC show that through the month of March 1997, Plaintiff had been receiving $307.00 per week in TTD benefits. Beginning April 1, 1997, he began receiving $960.21 a month alternating with $992.22 a month in SEB. We find nothing in the record to either explain or justify LWCC's actions.
An injured worker is entitled to receive temporary total disability benefits from the date of his disabling injury until either party shows a lawful ground for a change in his status. See Hopes v. Domtar Industries, 627 So.2d 676, 685 (La.App. 3d Cir. 1993) (citing Johnson v. Ins. Co. of N. America, 454 So.2d 1113, 1117-1119 (La. 1984) and Alfred v. City of Eunice, 503 So.2d 1131 (La.App. 3d Cir.), writ denied, 505 So.2d 63 (La.1987)). Defendant presented no evidence that CLARK was able to return to work or that his treating physician released him to return to work in any capacity. It is well established in Louisiana jurisprudence that an employer can change temporary total disability benefits to supplemental earnings benefits only when the employee has been released back to work by his treating physician. [Footnote omitted.]
Clark v. State, Dept. of Corrections, 94-0168 p. 3 (La.App. 3 Cir. 10/5/94); 643 So.2d 467, 469.
Accordingly, we find no error in Defendants being ordered to pay past due indemnity benefits in the amount of $1,770.57.
We next turn to that part of the judgment which increases Plaintiff's TTD benefits from $307.00 to $324.39. La.R.S. 23:1202(B) provides the following:
B. For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination. [Emphasis added.]
In Johnson v. Aetna Casualty & Surety Co., 422 So.2d 1187, 1188 (La.App. 1 Cir. 1982), writ denied, 429 So.2d 127 (La.1983) (emphasis added) (footnote omitted), the First Circuit noted:
Paragraph 2 [now B.] of R.S. 23:1202 provides that the weekly wage be determined on or before August 1 each year. This wage is applicable for the full period during which compensation is payable when the date of injury falls within the twelve month period commencing September 1 following the determination.
Accordingly, the workers' compensation judge erred in increasing Plaintiff's TTD benefit, and this portion of the judgment must be reversed.
We next address the issue of penalties and attorneys' fees.

*979 A workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld or terminated arbitrarily, capriciously, or without reasonable cause by the employer. La.R.S. 23:1201; 23:1201.2. The purpose of the penalty provision is to discourage an attitude of indifference toward the injured employee. Spinks v. Dept. Of Health and Human Res., 591 So.2d 423 (La.App. 3 Cir.1991), writ granted in part, 595 So.2d 648(La.), on remand, 605 So.2d 1384 (La.App. 3 Cir.1992). To avoid the imposition of penalties, an employer must reasonably controvert the claimant's right to compensation. La.R.S. 23:1201(E). Maxie, 657 So.2d 443. The test to determine if the employer has fulfilled its duty is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Thibodeaux v. L.S. Womack, Inc., 94-1375 (La. App. 3 Cir. 4/5/95); 653 So.2d 123; Penn v. Wal-Mart Stores, Inc., 93-1262 (La.App. 3 Cir. 6/15/94); 638 So.2d 1123, writ denied, 94-1835 (La.10/28/94); 644 So.2d 651.
Faul v. Bonin, 95-1236, pp. 8-9 (La.App. 3 Cir. 8/7/96); 678 So.2d 627, 632, writ denied, 96-2221 (La.11/15/96); 682 So.2d 769. Inasmuch as there is nothing in the record which supports Defendants' actions, we find no error in these awards.
Finally, we address Plaintiff's answer to the appeal in which he seeks damages for the filing of a frivolous appeal under La.Code Civ.P. art. 2164. It is well settled that "damages for frivolous appeal will not be awarded unless it manifestly appears that the appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates." Galland v. National Union Fire Insurance Co. of Pittsburg, Pa., 452 So.2d 397, 399 (La.App. 3 Cir.1984). Inasmuch as we find one of appellants' arguments well founded, such is clearly not the case here. We, therefore, deny Plaintiff's request for said damages.
Accordingly, for the reasons stated above, that portion of the judgment appealed which increases Plaintiff's TTD benefit is reversed. In all other respects the judgment appealed is affirmed. All costs of this appeal are assessed against appellants, Quail Tools, Inc. and Louisiana Workers' Compensation Corporation.
REVERSED IN PART; AFFIRMED IN PART.