GUIDRY, Judge.
Alvin T. Mims brought this worker’s compensation action to recover permanent total disability benefits, penalties and attorney’s fees from defendant, Travelers Insurance Company, the worker's compensation insurer of Mims’ former employer, Mims and Sons Repair Shop. The trial court determined that Mims failed to carry his burden of proving causality and rendered judgment in favor of defendant, dismissing plaintiff’s suit with prejudice. Plaintiff appealed.
The sole issue on appeal is whether Mims’ current disability is related to his accident of March 2, 1982.
At trial, it was stipulated between the parties that Mims was injured on March 2, 1982 while in the course and scope of his employment with Mims and Sons Repair Shop and that Travelers Insurance Company was the worker’s compensation insurer of his employer. On that date, Mims was assisting in efforts to tow a truck out of a ditch. Mims hooked a winch cable from the wrecker truck onto the bumper of the disabled truck. As the wrecker started to move forward, the cable snapped, striking Mims and hurling him to the ground onto his right side. As a result of the accident, Mims sustained fractures of his right rib cage which caused a partial collapse of his right lung, a right forearm fracture referred to as a “Monteggia” fracture, and a dislocated right shoulder. Mims was treated at the LSU medical center in Shreveport. Chest tubes with underwater seals were inserted into Mims’ right lung and closed reduction surgery was performed on his right forearm. On March 4, 1982, Mims underwent further surgery on his forearm due to the lack of success of the initial surgery. On the latter date, open reduction surgery with internal fixation of the ulnar fracture was performed. A twelve-hole metal bone plate was inserted into his arm, and a bone graft was also applied to the fracture site. The bone plate was removed approximately a year later due to the discomfort which it was causing Mims.
Travelers Insurance Company began payment of worker’s compensation benefits of $90.05 per week on March 3, 1982 and continued such payments for 117 weeks, for a total of $10,355.75. Travelers also paid Mims’ medical expenses in the amount of $12,397.51. Travelers ceased paying benefits to Mims on May 15, 1984 upon receipt of a medical report that Mims was completely recovered from his work-related injuries. Mims thereafter instituted the present suit.
The plaintiff in a worker’s compensation case has the burden of establishing the disability and causal relation with the employment accident by a preponderance of the evidence. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977); Young v. Hercules, Inc., 449 So.2d 721 (La.App. 3rd Cir.1984), writ denied, 450 So.2d 969 (La.1984). The plaintiff is not required to establish the exact cause of injury to recover worker’s com *800 pensation benefits; it is only necessary that he show that somehow the employment accident caused the disability. Flood v. Hub Auto Parts, Inc., 425 So.2d 941 (La.App. 4th Cir.1983), writ denied, 429 So.2d 158 (La.1983).
The determination of a causal relationship between a worker’s employment and disability is a question of fact for the trial court. This factual finding is entitled to great weight and should not be disturbed on appellate review unless it is found to be clearly wrong. Comeaux v. Martin Mills, Inc., 457 So.2d 253 (La.App. 3rd Cir.1984); Matthews v. Allied Chemical Corp., 454 So.2d 152 (La.App. 1st Cir.1984).
The evidence presented at trial consisted of the testimony of Mims, his wife, Elizabeth, and Dr. William L. Overdyke. Also submitted in evidence was the deposition of Dr. Clarence E. Poimboeuf and the various medical reports of physicians who treated and/or examined Mims after the accident. The general concensus of the medical testimony was that Mims is totally and permanently disabled. We must therefore determine if Mims’ present disability is causally related to his on-the-job accident of March 2, 1982.
Dr. Clarence E. Poimboeuf testified through deposition that he has been Mims’ family doctor for the past twenty years. Dr. Poimboeuf related a long history of medical problems plaguing 43-year-old Mims as far back as 1971. According to Dr. Poimboeuf’s records, Mims has suffered from diabetes for the past ten years. In addition to his problems with diabetes, Mims has seen Dr. Poimboeuf for stomach problems, a knee injury, an ankle injury, a nervous condition, respiratory infection, alcoholism, loss of appetite and just general poor nutrition. Mims was committed to Central Louisiana State Hospital in Pine-ville on three occasions due to his depression and suicidal tendencies.
Dr. Poimboeuf was not in his office on March 2, 1982 when Mims came in for treatment of his injuries. Dr. Poimboeuf saw Mims in August, 1982, when Mims came to his office requesting medication for his alcohol problem. Mims again saw Dr. Poimboeuf in October, 1982 for rectal bleeding. On August 2, 1983, Mims went to Dr. Poimboeuf complaining of pain in his right arm. The plate had been removed from his arm six weeks earlier. Mims again went to Dr. Poimboeuf in November, 1984 with continued complaints of pain in his right arm and shoulder. Dr. Poimboeuf thereupon referred him to Dr. William L. Overdyke, an orthopedic surgeon.
On November 5, 1984, Dr. Poimboeuf treated Mims for his diabetes and abdominal problems. Mims was hospitalized at that time for ten days. During his hospitalization, x-rays taken of his ribs and right shoulder revealed healed rib fractures and no acute fracture or dislocation of the right shoulder. Mims was hospitalized again on February 10, 1985. Mims was brought to the hospital in a hypoglycemic coma, due to the extremely low drop in his blood sugar count. While hospitalized, Mims went into congestive heart failure and also showed some signs of pneumonia. He was released on March 1, 1985, after his blood sugar level had been controlled. Mims was later hospitalized again for problems with his diabetes from March 10-21, 1985. On April 1,1985 Mims was once again hospitalized, this time for shortness of breath. It was determined then that Mims had an enlarged heart and was suffering from congestive heart failure. He was discharged on April 9th. Dr. Poimboeuf last saw Mims on April 25,1985 for a routine checkup. Mims’ diabetes and heart condition were under control at the time.
Dr. Poimboeuf opined that Mims is totally disabled from employment, but did not feel that his disability was related to his March, 1982 accident. He did not, however, totally rule out the possibility that the accident could have contributed to the degeneration of Mims’ overall physical condition.
The record reveals that Dr. T.A. Norris performed an orthopedic evaluation of Mims on August 15,1983, upon the request of Travelers Insurance Company. At that *801 examination, Mims complained of constant aching in the ulnar region of his right forearm. Mims also told Dr. Norris that he had lost some strength in his right arm. Dr. Norris noted no problems with Mims’ right shoulder at the time, and also found the right clavicle fracture to be well-healed and in good alignment. The right forearm was found to lack 30 degrees of the pronation range achieved by the left forearm. Dr. Norris x-rayed Mims’ arm and shoulder and found a healed segmental fracture of the right ulna and a healed distal fracture in good alignment. Dr. Norris’ conclusions as to Mims’ condition are as follows:
“This patient is evaluated approximately seventeen months from sustaining a fairly unusual and complex fracture dislocation of the right forearm, referred to as a Monteggia fracture; this involves one or more fractures of the shaft of the ulna, along with dislocation of the head of the radius at the elbow. This man’s fracture in the ulna was segmental, in other words having three separate bone fragments, and was corrected surgically with what I would have to call excellent results for this complex situation. He is approximately one month from removal of a twelve-hole bone plate. His actual specific and objective limitations appear to be only in the loss of terminal pronation of the right forearm, and I would anticipate that this will be permanent. The other symptoms and problems and areas of tenderness are related to the long period of immobilization and only light activity, and to his recent metal removal. He has a period of muscle redevelopment and muscle rehabilitation to go through before he will be able to resume his work, but he is not presently able to carry out more than very modest strength building exercises because the multiple unhealed screw holes give him a temporary structural weakness of the integrity of the right ulna ... I believe that by another six months at least, he will be able to return to his regular job but I feel that he will 'carry a degree of permanent partial disability in the amount of 10 percent of the right arm from the elbow on out distally ... I would have to call this an excellent repair of this severe and complex forearm injury.”
Mims was examined by another orthopedic surgeon, Dr. Don H. Burt, on four separate occasions following Dr. Norris’ examination. Dr. Burt first examined Mims on September 26, 1983. Dr. Burt found complete healing of the fracture with no arthritic change. He noted that Mims lacked only 10 degrees of extension at his right elbow and 10 degrees supination (rotation) of his right forearm. He concluded that Mims could return to his previous work activity with a permanent disability rating of 20%.
Dr. Burt examined Mims again on June 13,1984. At this time, Mims was complaining of soreness in his forearm and some occasional tingling in the fingers of his right hand. The x-rays performed on Mims were all found within normal range. Mims returned to see Dr. Burt on August 27, 1984 with complaints of soreness in his shoulder, elbow and forearm. Dr. Burt diagnosed Mims’ condition as tendonitis, possibly brought about by the excessive work activity undertaken by Mims several days prior to the examination. Mims’ last examination by Dr. Burt occurred on October 8, 1984. Dr. Burt reaffirmed his prior diagnosis of tendonitis and recommended therapy and exercises to Mims in order to strengthen the muscles about his shoulder.
Mims was examined by Dr. William L. Overdyke, an orthopedic surgeon recommended to him by Dr. Poimboeuf, on two separate occasions. Dr. Overdyke first examined Mims on November 1, 1984 and found that the fractures to his right forearm had healed well. Upon examination, Dr. Overdyke testified that he found Mims to be a severely cachectic, malnourished man with extreme atrophy. Dr. Overdyke testified that the atrophy was not of a traumatic nature, but rather was secondary to Mims’ generalized poorly nourished condition. The examination by Dr. Overdyke revealed tenderness that was poorly localized around the right shoulder. Dr. Over- *802 dyke treated this with anti-inflammatory medication and diagnosed Mims’ condition as tendonitis. He assessed no percentage of disability at that time. Mims returned to Dr. Overdyke on December 6, 1984 with continued complaints of pain in the right shoulder. Dr. Overdyke’s diagnosis of tendonitis remained unchanged. He also found some muscle atrophy in both shoulders, apparently due to Mims’ poorly controlled diabetes. Dr. Overdyke concluded that Mims was disabled from performing any type of even minimal manual labor due to his general medical condition. Dr. Over-dyke testified, however, that he did not believe Mims’ condition was related to an accident of any kind. He felt it was simply associated with the general poor condition of Mims' health. From a purely orthopedic viewpoint, Dr. Overdyke found no cause for disability.
Mims underwent a psychiatric evaluation on March 19, 1985 by Dr. Joe B. Hayes. Mims complained to Dr. Hayes of chronic pain in the surgery site of his right arm and in his right shoulder. Dr. Hayes found Mims to be depressed about his financial situation and the pain which he experienced, and quite preoccupied with his disability. Following the examination, Dr. Hayes made the following observations of Mims in his report dated March 21, 1985:
“In my professional opinion, this man has a significant depression that is reactionary to the trauma that he has sustained and the physical deformity that he has. He also has some symptoms of the post-traumatic stress disorder, as exemplified by continuing nightmares, flashbacks and social alienation. He seems to have a mild organic brain syndrome that could be better defined by further evaluation, such as psychological testing with an IQ and some projective techniques. This organic brain syndrome may be on the basis of his alcohol use or his chronic depression and anxiety. He also seems to have a chronic pain syndrome that is related to his surgical sights in repair of his right shoulder and arm, primarily.”
The record also contains the discharge summary prepared by Dr. A.Á. Herold, Jr. from Mims’ hospitalization in Doctors’ Hospital in Shreveport from April 14, 1985 through April 20, 1985. In this report, Dr. Herold noted that Mims was extremely nervous and apprehensive upon physical examination. The chest x-rays indicated generalized enlargement of the heart. Mims was diagnosed as having a cardiom-yopathy as well as a history of diabetes, alcohol abuse and heavy smoking, all three cardiomyopathy risks. Dr. Herald’s report concluded that, “[w]ith the cardiomyopa-thy, hypertensive cardiovascular disease, and diabetes mellitus with diabetic neuro-pathy I consider him to be totally and permanently disabled”.
At trial, Mims testified that he was not able to return to work because of his diabetes, heart trouble, shortness of breath and the calluses on his feet. Mims later explained that, although he had diabetes prior to the accident, it wasn’t until afterwards that it actually disabled him and kept him from going to work. He also stated that he felt that his heart trouble developed because of the pressures and worries brought on by the accident and its attendant financial strains on his family. Mims also testified that he was unable to pick things up with his right arm, and that he has to keep his right hand in his pocket to keep his shoulder from popping out of socket. Mims stated that he drank heavy despite the doctors’ warnings against it due to his diabetes. Mims claimed that he stopped drinking altogether in January, 1985. Mims also smokes about a pack of cigarettes a day.
Mrs. Mims’ testimony substantiated Mims’ allegations of pain in his right shoulder. She testified that Mims has not been the same since the accident, either physically or mentally. Mrs. Mims stated that, “I feel that the accident has affected his whole body”.
It is clear from a review of the evidence that Mims is totally and permanently disabled. He is apparently a very sick man and for that we sympathize with *803 him. However, the evidence forces us to agree with the trial court that he failed to prove that the employment accident of March 2, 1982 more probably than not caused his present disability. Although plaintiff opines that his medical problems were brought about or aggravated by his work-related injuries, the evidence simply fails to substantiate this supposition. On the contrary, the evidence clearly indicates that Mims suffered from diabetes, depression, stomach disorders and the beginnings of respiratory difficulties long before the accident occurred. Although these illnesses did increase in intensity over the years following the accident, there simply is no medical evidence to link this occurrence with plaintiffs fractured arm and dislocated shoulder. The only medical evidence which even hinted at a connection between the injuries sustained in March, 1982 and Mims’ deteriorated physical condition was the opinion of the psychiatrist, Dr. Hayes, who performed but one evaluation of Mims and based his opinion solely on the allegations as set forth by Mims. The trial court obviously placed less emphasis on this testimony than on the numerous other physicians who treated Mims and found no relation between Mims’ present disability and his injuries from the accident. We find that the trial judge committed no clear error nor did he abuse his discretion in refusing to award plaintiff worker’s compensation benefits.
For the above and foregoing reasons, the judgment of the trial court is affirmed with appellate costs assessed to plaintiff-appellant.
AFFIRMED.